**BOARD OF TRUSTEES OF LOCAL 41, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS HEALTH FUND, Board of Trustees of Local 41, International Brotherhood of Electrical Workers Annuity Fund, and Board of Trustees of Local 41, International Brotherhood of Electrical Workers Pension Fund, Plaintiffs,**

v.

**Robert ZACHER and Robert Zacher, Inc., a Domestic Corporation, Both Individually and d/b/a Partners under the Name of Robert Zacher Electric, a/k/a Zacher Electric, a Partnership, Defendants.**

No. CIV–88–1066S.

United States District Court, W.D. New York.

Sept. 12, 1991.

Craig L. Miller, Diebold, Farmelo, Gorman, Ginsberg & Miller, Buffalo, N.Y., for plaintiffs.

James N. Schmit and Hedwig M. Auletta, Damon & Morey, Buffalo, N.Y., for defendants.

SKRETNY, District Judge.

## INTRODUCTION

Now before this Court are the plaintiffs' motion for partial summary judgment and the defendants' cross-motion for summary judgment, pursuant to Fed.R.Civ.P. 56.[1]

Plaintiffs are the Board of Trustees of Local 41, International Brotherhood of Electrical Workers ("Local 41"), Health Fund ("Health Fund"), Board of Trustees of Local 41, Annuity Fund ("Annuity Fund") and Board of Trustees of Local 41, Pension Fund ("Pension Fund") (collectively referred to as "the Funds"). The three named defendants in this lawsuit, Robert Zacher, Robert Zacher Inc. and Robert Zacher Electric[2] all constitute a single electrical business founded and managed by Robert Zacher and from time to time known by any of these names. Therefore, this Court shall collectively refer to the defendants as "Zacher."

This lawsuit involves provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, as amended by the Multiemployer Pension Plan Amendments Act ("MPPAA"), Pub.L. 96–364 (1980). Plaintiffs also assert a right to an equitable accounting under New York law. This Court has jurisdiction of this lawsuit pursuant to 29 U.S.C. § 1132, 29 U.S.C. § 185 and principles of its pendent jurisdiction.[3]

The Funds are multiemployer pension and welfare trust funds, jointly administered by Local 41 and electrical contractor employers ("employers"), designed to provide benefits to employees performing work which is covered under a collective bargaining agreement. So that they can pay out and calculate benefits, the Funds depend on periodic monetary contributions ("contributions") and payroll reports ("reports") from employers with respect to

1. Although plaintiffs actually seek a total summary judgment with respect to their substantive claims for relief, plaintiffs deem their motion one for partial summary judgment because they intend to seek statutory attorneys' fees by separate motion at a later time.

2. Robert Zacher Electric a/k/a Zacher Electric is a partnership consisting of two partners, Robert Zacher Inc. and Robert Zacher individually.

3. Since plaintiff commenced this lawsuit prior to December 1, 1990, 28 U.S.C. § 1367 does not apply.

work performed by their employees within the terms of the collective bargaining agreement. Zacher operates an electrical business and has, at certain times, made contributions and furnished reports to the Funds.

In Count One of the Amended Complaint, the Funds allege that Zacher has failed to make timely contributions to the Funds for the period from January 1987 to January 1988 as required by the collective bargaining and other agreements. The Funds seek liquidated damages and interest stemming from Zacher's delinquent payment of contributions. Thus, in their summary judgment motion the Funds do not seek the underlying contributions, for they have indisputably been paid; the Funds only seek damages and interest for the delinquency.[4] In Count Two of the Amended Complaint, the Funds allege that since January 1988 Zacher has failed to submit monthly payroll reports and contributions to the Funds, also as required by the collective bargaining and other agreements. In their summary judgment motion, the Funds seek an audit or an equitable accounting under New York law to discover "... payroll and wage information ..." indicating the amount of allegedly owing contributions from Zacher and a court order requiring Zacher to file allegedly owing reports.

Cross-moving for summary judgment, with respect to Count One of the Amended Complaint, Zacher argues that the Funds are not entitled to either liquidated damages, because the liquidated damages provision upon which the Funds rely is void as a penalty, or interest, because the interest rate which the Funds seek to impose is usurious. With respect to Count Two of the Amended Complaint, Zacher argues that the Funds are not entitled to either an audit, because they failed to give Zacher proper contractual notice, or an accounting, as a matter of law.

In support of their motion, the Funds submit the affidavit of Gene Adams ("Adams"); the affidavit of Michael Franey ("Franey"); the supplemental affidavit of Michael Franey; the affidavit of Daniel Erker ("Erker"); the affidavit of David Roll ("Roll"); the affidavit of Craig Miller, Esq.; the deposition transcript of Robert Zacher; statements of fact; and a legal memorandum ("Funds memo.").

In support of its cross-motion, Zacher submits the affidavit of James Schmit, Esq. with exhibits; the affidavit of Robert Zacher with exhibits ("Zacher aff."); a Letter Brief dated February 12, 1991 ("Letter Brief"); statements of fact; and a legal memorandum ("Zacher memo.").

This Court has considered all these submissions and oral argument held on February 4, 1991.

Conclusion: For the reasons set forth below, with respect to Count One of the Amended Complaint this Court denies the Funds' motion for summary judgment and also denies Zacher's cross-motion for summary judgment. With respect to Count Two of the Amended Complaint, this Court denies in part and grants in part the Funds' motion for summary judgment. Also with respect to Count Two, this Court denies in part and grants in part Zacher's cross-motion for summary judgment.

## FACTS

The following material facts are not in dispute.

The International Brotherhood of Electrical Workers ("IBEW") is an international labor organization representing electrical workers through local union affiliates. (Adams, ¶ 3).

The National Electrical Contractor's Association ("NECA") is an employer's association representing electrical contractors for purposes of collective bargaining with lo-

---

**4.** Health Fund, Annuity Fund and Pension Fund each move for summary judgment on the first cause of action in different amounts: Health Fund moves for summary judgment with respect to the first cause of action for a money judgment in the amount of $1182.65, Pension Fund moves for summary judgement with respect to the first cause of action for a money judgment in the amount of $1716.75 and Annuity Fund moves for summary judgment with respect to the first cause of action for a money judgment in the amount of $1373.40.

cals of the IBEW such as Local 41. (Adams, ¶ 6).

The Health Fund, Annuity Fund and Pension Fund were created in the 1960's for the purpose of providing pension and welfare benefits to union employees whose employers made contributions to the Funds as provided under a collective bargaining agreement between NECA and Local 41 known as the Inside Wireman's Agreement ("Inside Agreement"), which is amended from time to time. (Franey, ¶ 3). Health Fund is an employee benefit plan within 29 U.S.C. § 1002(1). Annuity Fund and Pension Fund are employee pension benefit plans within 29 U.S.C. § 1002(2)(A)(i) or (ii).

Each Fund was created pursuant to a separate Agreement and Declaration Of Trust (collectively the "Declarations") and is jointly administered by a Board of Trustees consisting of representatives of Local 41 and employers appointed by NECA.[5]

Section 4 of each Declaration provides that

[e]ach Employer agrees that the Trustees shall have the right to require such reports as they deem necessary or desirable for the administration of the [relevant] Fund, and each Employer shall promptly furnish to the Trustees, on demand, records of Employees, names, social security numbers, hours worked by each Employee, and such other information as the Trustees may reasonably require in the administration of the Trust. For the purposes of compliance with this section, each Employer agrees to permit inspection of its payroll and wage records of the Employees on whose behalf contributions to the [relevant] Fund have or should be made upon receiving notice at reasonable hours, by the Trustees or their designee.

(Franey, exhs. 2, 3, 4). Each of the Declarations defines employer as

[a]ny person, association, firm, or corporation who or which, as of the date of this Agreement or hereafter, has a collective bargaining agreement with the union requiring periodic contributions to the Trust Fund created by this Agreement and Declaration of Trust.

(Franey, ¶ 9) (Not from original.)

On May 1, 1985, Local 41 and NECA entered into an Inside Agreement in effect through April 30, 1988. This Inside Agreement superseded a previous Inside Agreement.[6]

The preface to the Inside Agreement states that the Inside Agreement "... shall apply to all firms who sign a Letter of Assent to be bound ..." by its terms.

Section 4.02 of the Inside Agreement provides that employers subject to the Inside Agreement shall make certain monthly payments and reports to the Funds.

Specifically, § 4.02 provides that

The Employers agree to comply with all rules and regulations for the operation and maintenance of these Funds adopted by the Board of Trustees and will submit monthly payments and reports to the Offices of the Health, Pension, Annuity and Education Funds on forms furnished by the Funds. Failure by the Employer to submit contributions when they are due will result in the Employer being subject to a 10% penalty, interest charge, attorney's fees and court costs.

Section 2.06 of the Inside Agreement defines an employer covered under the Agreement as

... any person, firm or corporation whose main business is that of an electrical contractor, engaged as an Employer in erecting, altering, installing, repairing, servicing or maintaining electrical wiring, devices, appliances or equipment, and also the purchasing of supplies and the selling of manufactured parts and

---

**5.** Pension Fund was established by an Agreement And Declaration of Trust dated April 6, 1962. (Franey, exh. 2). Annuity Fund was established by an Agreement And Declaration of Trust dated November 1, 1966. (Franey, exh. 3). Health Fund was established by an Agreement And Declaration of Trust dated May 3, 1960. (Franey, exh. 4).

**6.** Hereafter, this Court's reference to the "Inside Agreement" refers to the Inside Wireman's Agreement between Local 41 and NECA in effect from May 1, 1985 to April 30, 1988.

products incorporated in such installations.

Local 41 and NECA entered into a separate collective bargaining agreement known as the Residential Wireman's Agreement ("Residential Agreement") which went into effect April 1, 1984 and continued in effect from May 1 through April 30, year to year, unless modified according to the procedure contained therein. The preface to the Residential Agreement states that it "... shall apply to all firms who sign a letter of assent to be bound ..." by its terms.

The Residential Agreement separately covers electrical work performed

... on all units built or remodelled for family residence which are four stories and under, including basement [sic].

'Electrical Work' shall be defined as all wiring for heat, power and lighting with a voltage of 480 volts or less.

Section 2.03B of the Residential Agreement defines an employer covered under the Residential Agreement as

... any person, firm or corporation whose main business is that of an electrical contractor, engaged as an Employer in residential electrical wiring, repairs or maintenance of new or old buildings used as dwellings as defined in 'TYPE OR [sic] WORK COVERED BY THIS AGREEMENT.'

Under the Residential Agreement, there is no provision regarding submission by employers of contributions or reports to the Funds.

In late 1978, Robert Zacher began his own electrical business. (Zacher, ¶ 6). On November 17, 1978, Robert Zacher and Gene Adams, then Business Manager of Local 41, signed two documents entitled Letters of Assent–A. Pursuant to one Letter of Assent–A, Robert Zacher, Inc. "... authorize[d] the New York State Chapter N.E.C.A., Inc. Buffalo Div. as its collective bargaining representative for all matters contained in or pertaining to the current approved Inside labor agreement between the Western New York State Chapter N.E.C.A. Inc. Buffalo Division and Local Union 41, IBEW." (Adams, exh. A).

Pursuant to the other Letter of Assent–A, dated November 17, 1978, Robert Zacher, Inc. "... authorize[d] the New York State Chapter N.E.C.A., Inc. Buffalo Div. as its collective bargaining representative for all matters contained in or pertaining to the current approved Residential labor agreement between the Western New York State Chapter N.E.C.A. Inc. Buffalo Division and Local Union 41, IBEW. (Adams, exh. A).

These Letters of Assent were approved by the IBEW's international office on November 22, 1978.

Robert Zacher signed two additional Letters of Assent–A "... authoriz[ing] ..." NECA as a collective bargaining representative "... for all matters contained in or pertaining to the current approved Inside Wireman labor agreement between the Western New York Chapter—N.E.C.A. of Buffalo and Local 41 IBEW[,]" on behalf of Zacher Electric and Zacher Electric, Co., on June 11, 1979 and August 15, 1979, respectively. These Letters of Assent–A were also approved by the IBEW's international office. (Adams, exhs. B & C).

Zacher has not tendered written notice of termination under the Letters of Assent–A with respect to the Inside Agreement. (Adams, ¶ 26). By letter dated November 27, 1989, Robert Zacher noticed Local 41 that Robert Zacher, Inc. d/b/a Zacher Electric and Zacher Electric Co. was terminating any authority granted to NECA to collectively bargain for the Zacher entities under the Residential Agreement. (Erker, ¶ 5 and exh. 1 thereto).

On September 24, 1981, the boards of trustees of the Funds amended their respective Fund's plan to provide that

[i]n any action brought under ERISA or other applicable statutes for the recovery of delinquent contributions, the interest rate shall be an effective annual rate of approximately twenty-four percent (24%) and the liquidated damages shall be at the rate of twenty percent (20%) of the unpaid contributions.

The Amendments further provide that

[i]n the event the Trustees do not initiate an action or the action is settled prior

to a judgment being obtained, the Trustees may require the delinquent employer to pay interest from the due date of said contribution and liquidated damages up to the rates specified in the preceding paragraph.

(Franey, ¶ 5 and exh. 1 attached thereto).

Zacher has submitted contributions to the Funds for the period from January 1, 1987 to January 1, 1988, although these contributions were paid late. Zacher submitted contributions to the Funds for the period from January 1, 1987 to January 1, 1988 before the Funds commenced this lawsuit. (Zacher's Statement of Undisputed Facts, ¶¶ 6–7; Funds' Statement of Undisputed Facts, ¶¶ 10–12).

## SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate where "... there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The burden is upon the moving party to demonstrate the absence of a material factual dispute. Fed.R.Civ.P. 56(e). Once that burden is met, the non-moving party "... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). This Court must draw all reasonable inferences in favor of the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970). The function of the district court in considering a summary judgment motion is not to resolve disputed issues of fact but only to determine whether there is a genuine issue to be tried. *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir.1991).

With this standard in mind, this Court now addresses the substantive legal issues in this lawsuit.

## DISCUSSION

I. The Funds' Entitlement To Liquidated Damages And Interest For Delinquent Contributions (Count One Of The Amended Complaint)

In Count One of the Amended Complaint and now via their summary judgment mo-

tion, the Funds seek liquidated damages and interest on paid but delinquent contributions by Zacher to the Funds. Zacher opposes payment of liquidated damages and interest on several grounds.

### A. *Is Zacher Bound By The Inside And Residential Agreements?*

Initially, the Funds contend that Zacher's obligation to make contributions and reports to the Funds stems in part from provisions contained in the Inside Agreement. Zacher disputes whether it is bound under this Agreement. (*See*, Zacher's Opposition To Plaintiff's Statement of Undisputed Facts, ¶¶ 2–4; Zacher memo, p. 9, note 1). Therefore, this Court addresses the issue of Zacher's initial obligation, if any, emanating from the Inside Agreement.

#### i. *Inside Agreement*

█ The preface to the Inside Agreement states that the Inside Agreement "... shall apply to all firms who sign a Letter of Assent to be bound ..." by its terms. As noted above, Zacher executed various Letters of Assent–A which, by their own terms, "... authorize[d] ..." NECA as the collective bargaining representative "... for all matters contained in or pertaining to the current approved Inside labor agreement...." The Letters of Assent–A further state that they shall remain in effect until the undersigned employer affords NECA written notice of termination at least 150 days prior to the current anniversary date of the current approved Inside Agreement.

Zacher "... admit[s] the legitimacy of Robert Zacher's signature ..." on the various Letters of Assent. (Zacher memo., p. 3). Moreover, it is undisputed that Zacher has not noticed NECA of any termination under the Letters of Assent with respect to the Inside Agreement. (Roll, ¶ 10; Adams, ¶ 26).

Zacher's obligation, if any, to make reporting and monetary contributions to the Funds emanates initially from § 4.02 of the Inside Agreement which states in relevant part that "[e]mployers agree to comply

with all rules and regulations for the operation and maintenance of [the] Funds ... and will submit monthly payments and reports to the Offices of the Health, Pension, Annuity and Educations Funds...." Section 2.06 of Inside Agreement defines an employer covered under the Agreement as

> ... any person, firm or corporation whose main business is that of an electrical contractor, engaged as an Employer in erecting, altering, installing, repairing, servicing or maintaining electrical wiring, devices, appliances or equipment, and also the purchasing of supplies and the selling of manufactured parts and products incorporated in such installations.

This Court finds, and Zacher offers no evidence to contradict, that Zacher is "... engaged as an Employer in erecting altering, installing, repairing, servicing, or maintaining electrical wiring ..." etc. and therefore is an employer within § 2.06. (*See* Zacher Deposition, p. 9).

The language contained in the Letters of Assent–A authorizing NECA as its collective bargaining representative "... for all matters contained in or pertaining to the current approved Inside labor agreement...." is plain and unequivocal. In fact, Zacher offers no legal or factual arguments to support a finding that it is not bound by the Letters of Assent–A and consequently the Inside Agreements referenced therein.

Therefore, this Court concludes that by virtue of executing the Letters of Assent–A, Zacher is bound by the terms of the Inside Agreement. *See Local 257, International Brotherhood of Electrical Workers, AFL–CIO v. Grimm*, 786 F.2d 342 (8th Cir.1986) (Court held exact Letter of Assent–A at issue in this case bound an electrical contracting firm to a collective bargaining agreement and, therefore, also bound the contractor to make pension fund contributions as required by the collective bargaining agreement.).

### ii. *Residential Agreement*

■ Unlike the Inside Agreement, however, the Residential Agreement contains no provision regarding monetary and reporting contributions to the Funds. Therefore, to the extent that Zacher employees have performed work as defined by the Residential Agreement, such work is not covered under the Inside Agreement and Zacher is not subject to the reporting and contribution requirements of the Inside Agreement. (*See* Adams, ¶¶ 20–21). The issue of whether work performed by Zacher employees is within the Residential Agreement becomes relevant not only with respect to the issue of the Funds' entitlement to an equitable accounting, which this Court addresses below, but with respect to the issue of whether Zacher is bound to submit reports and contributions since January 1988.

Just as this Court finds Zacher bound by the Inside Agreement, this Court finds Zacher bound by the Residential Agreement by virtue of its execution of the Letter of Assent–A authorizing NECA to act as its "... collective bargaining representative for all matters containing in or pertaining to the current approved Residential labor agreement...." Similar to the Inside Agreement, the preface to the Residential Agreement states that it "... shall apply to all firms who sign a Letter of Assent to be bound ..." by its terms. Generally, the Residential Agreement governs "employers." Section 2.03B of the Residential Agreement defines an employer covered under the Agreement as

> ... any person, firm or corporation whose main business is that of an electrical contractor, engaged as an Employer in residential electrical wiring, repairs or maintenance of new or old buildings used as dwellings as defined in 'TYPE OR [sic] WORK COVERED BY THIS AGREEMENT.'

This Court finds, and Zacher offers no evidence to contradict, that it is an employer within the Residential Agreement.

The Residential Agreement separately and exclusively covers electrical work performed

> ... on all units built or remodelled for family residence which are four stories and under, including basement [sic].

'Electrical Work' shall be defined as all wiring for heat, power and lighting with a voltage of 480 volts or less.

As noted above, by letter dated November 27, 1989, Robert Zacher noticed Local 41 that Robert Zacher, Inc. d/b/a Zacher Electric and Zacher Electric Co. was terminating any authority granted to NECA to collectively bargain for the Zacher entities under the Residential Agreement. (Erker, ¶ 5 and exh. 1 thereto).

### B. *Liquidated Damages*

In Count One of the Amended Complaint, and via their summary judgment motion, the Funds seek liquidated damages in an amount representing twenty percent of the delinquent contributions for the period from January 1987 to January 1988. In support of their liquidated damages claim, the Funds rely on the 1981 Amendments to the Declarations which provide in relevant part that "[i]n any action brought under ERISA ... for the recovery of delinquent contributions, ... the liquidated damages shall be at the rate of twenty percent (20%) of the unpaid contributions." (Franey, ¶ 5 & exh. 1 attached thereto).

In this case, it is undisputed that Zacher paid contributions which it owed the Funds for the period January 1987 to January 1988 but that they paid them late. It is also undisputed that Zacher paid these delinquent contributions to the Funds before the Funds filed this lawsuit. Zacher argues that under these facts ERISA § 502 prohibits the Funds from recovering liquidated damages for delinquent contributions.

ERISA §§ 502 and 515, 29 U.S.C. §§ 1132 and 1145 ("§ 502" "§ 515"), respectively, as amended by the MPPAA, govern the enforcement of unpaid employer contributions to employee pension and welfare trust funds. Section 515 mandates that employers obligated to make contributions to a multiemployer plan, such as the Funds,

... under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

Section 502 is the remedial provision for the recovery of liquidated damages for unpaid plan contributions. Section 502(g)(2) in relevant part provides:

In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of—

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) or the amount determined by the court under subparagraph (A)....

Relying on § 502(g) and recent interpretive case law, Zacher contends that the Funds may not recover liquidated damages in this case under the following four step analysis. First, citing the preemptive effect of ERISA, Zacher argues that § 502(g) remains the exclusive mechanism by which to recover liquidated damages for delinquent contributions to employee pension and welfare trust funds governed by ERISA, such as the Funds in this case. (Letter Brief). Second, Zacher contends that § 502(g) by its own terms applies only "... to those situations where contributions remain unpaid ..." at the time a lawsuit is filed for their recovery and, concomitantly, § 502(g) remains inapplicable where, as in this case, an employer has tendered payment of delinquent pension and welfare trust fund contributions prior to commencement of a lawsuit for their recovery. (Zacher memo., p. 6; Letter Brief, p. 1). Third, since it remains undisputed that Zacher paid the delinquent contributions at issue prior to commencement of this lawsuit, Zacher argues that the Funds have no available remedy under § 502(g). Fourth and finally, because, according to Zacher, § 502(g) is the exclusive remedy for liquidated damages on delin-

quent contributions to employee pension and welfare trust funds governed by ERISA, and § 502(g) does not apply in this case where such contributions are not unpaid at the time of suit, there can be no recovery of liquidated damages as provided in any of the agreements at issue. In other words, Zacher argues that § 502(g) preempts recovery of contractual liquidated damages even where § 502(g) by its own terms does not apply.

■ Zacher is correct that § 502(g)(2)(c)(ii) is the exclusive scheme to recover liquidated damages for unpaid contributions to employee pension and welfare trust funds governed by ERISA. Zacher is also correct that an ERISA plaintiff may not recover statutory liquidated damages, that is, pursuant to § 502(g)(2)(c)(ii), for delinquent contributions to employee pension and welfare trust funds governed by ERISA where the contributions, although delinquent, have been paid either prior to commencement of suit or prior to judgment. *Michigan Carpenters Council Health And Welfare Fund v. C.J. Rogers, Inc.*, 933 F.2d 376, 388–89 (6th Cir.1991) (prior to judgment); *Parkhurst v. Armstrong Steel Erectors, Inc.*, 901 F.2d 796, 797–98 (9th Cir.1990) (prior to commencement of suit); *Carpenters & Joiners Welfare Fund v. Gittleman Corporation*, 857 F.2d 476, 478–79 (8th Cir.1988) (prior to commencement of suit).[7]

■ However, noting that this issue has not been addressed by the Second Circuit, this Court concludes that § 502(g) does not preempt recovery of contractual liquidated damages for delinquent employee pension and welfare trust fund contributions where, as in this case, such contributions have been paid prior to suit.

Section 502(g)(2) speaks only in terms of the recovery of unpaid contributions; Section 502(g) does not by its own terms cover the situation in this case, where contributions to the plan have been paid prior to suit.

In *Idaho Plumbers And Pipefitters v. United Mechanical Contractors, Inc.*, 875 F.2d 212 (9th Cir.1989), the Ninth Circuit considered § 502(g)'s preemption of the federal common law of liquidated damages when § 502(g), by its own terms, did not apply since, as in this case, no employee pension and welfare trust fund contributions were unpaid at the time of suit. *Id.*, at 215. Examining the legislative history of § 502(g), the Court concluded that Congress did not intend to preempt the common law of liquidated damages where § 502(g) did not apply. Therefore, the Ninth Circuit went on to consider the enforceability of a contractual liquidated damages provision.[8]

Relying on *Idaho Plumbers*, recently the Sixth Circuit, in *Michigan Carpenters*, held that union pension and health and welfare funds had valid contractual claims for liquidated damages against a union employer for delinquent employee pension and welfare fund contributions under collective bargaining agreements where the employer tendered the delinquent contributions prior to a judgment entered against the employ-

---

**7.** With respect to the issue of whether § 502 applies for the recovery of liquidated damages on contributions unpaid at the time of *suit* or § 502 applies for the recovery of liquidated damages on contributions unpaid at the time of *judgment,* although the Second Circuit has not addressed the issue other Circuit Courts of Appeals are not in agreement. In *Michigan Carpenters,* the Sixth Circuit disagreed with several other Courts which found that § 502 applied to contributions unpaid at the time of suit and held that an ERISA plaintiff cannot recover liquidated damages for delinquent employee pension and welfare trust fund contributions where the contributions have been paid prior to judgment. This Court need not and does not address the issue of § 502's application to contributions unpaid at time of suit versus contri-

butions unpaid at time of judgment. In this case, it remains undisputed that the Funds seek liquidated damages for contributions which, although delinquent, were paid prior to suit.

**8.** In its memorandum, Zacher relies on *Idaho Plumbers* for the proposition that § 502(g) does not apply to suits, such as this, where delinquent employee pension and welfare fund contributions are paid at the commencement of suit. Zacher, however, does not address the subsequent and, for purposes of this case relevant, discussion in *Idaho Plumbers* concerning § 502(g)'s preemption of common law liquidated damages remedies where that provision does not apply.

er. Since the contributions were not "unpaid" within the meaning of § 502(g), i.e. unpaid prior to judgment, the Court found § 502 inapplicable and, agreeing with *Idaho Plumbers*, held that based on its legislative history, § 502(g) only preempted the common law of liquidated damages where the terms of § 502 were satisfied. *Id.*, 933 F.2d at 389–90.

In support of their argument that the Funds cannot recover liquidated damages in this case, the defendants have directed this Court's attention to the recent Supreme Court case of *Ingersoll–Rand Co. v. McClendon*, —— U.S. ——, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). In that case, holding that ERISA preempted a state law wrongful discharge claim, the Supreme Court discussed the Congressional intent prompting ERISA § 514(a), 29 U.S.C. § 1144(a), the statute's expansively worded pre-emption provision. The Court said "[s]ection 514(a) was intended to ensure that plans and plan sponsors would be subject to a uniform body of benefit law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government." *Id.*, 111 S.Ct. at 484. However, this Court's conclusion with respect to the Funds' legal right to recovery of contractual liquidated damages in this case is not inconsistent with *Ingersoll–Rand*. ERISA simply does not preempt other sources of law beyond the breadth of ERISA's coverage.

■ Although this Court concludes that ERISA does not pre-empt the Funds' contractual liquidated damages remedy for delinquent contributions, because there exists conflicting contractual provisions with respect to liquidated damages, this Court must deny the Funds' and Zacher's motions for summary judgment with respect to the issue of the Funds' recovery of liquidated damages.

As noted above, on September 24, 1981, the boards of trustees of the Funds amended the Funds' plans to provide for the recovery of liquidated damages in an amount equivalent to twenty percent of unpaid contributions. The Amendments further provide that

> [i]n the event the Trustees do not initiate an action or the action is settled prior to a judgment being obtained, the Trustees may require the delinquent employer to pay interest from the due date of said contribution and liquidated damages up to the rates specified in the preceding paragraph.

(Franey, ¶ 5 & exh. 1 attached thereto). The Funds argue that since Zacher's payments to the funds were "... chronically delinquent ..." that by virtue of the Amendments the Funds are entitled to a twenty percent liquidated damages penalty.

However, Zacher argues that the Inside Agreement, executed after the Amendments and which contains a different provision with respect to a penalty payment for delinquent contributions to the Funds, supersedes the twenty percent liquidated damages provision contained in the Amendments.

§ 4.02 of the Inside Agreement provides that

> [t]he Employers agree to comply with all rules and regulations for the operation and maintenance of [the] Funds adopted by the Board of Trustees and will submit monthly payments and reports to the Offices of the [Funds] on forms furnished by the Funds.

Although this provision on its face supports the Funds' position that the liquidated damage provision in the Amendments governs, the next clause of § 4.02 arguably undercuts the Funds' interpretation and supports Zacher. Section 4.02 next provides that

> [f]ailure by the Employer to submit contributions when they are due, will result in the Employer being subject to a 10% penalty, interest charge, attorney's fees and court costs.

It can be argued, as the Funds do here, that § 4.02, by first requiring that employers "... agree to comply with all rules and regulations for the operation ... of [the] Funds adopted by the Board of Trustees ..." binds employers to the terms of the Amendments. This position is arguably

supported by language in the Amendments also providing that "... the interest and liquidated damages to be awarded are to be determined by reference to the [each fund's] plan...."

However, neither § 4.02 nor any other portion of the Inside Agreement, which was executed after the Amendments, refers to the Amendments. Moreover, § 4.02 contains a ten percent "penalty" provision with respect to unpaid contributions to the Funds, a provision inconsistent with the liquidated damages provision contained in the Amendments. Since § 4.02 was effected after the Amendments, it can be argued, as Zacher does here, that the liquidated damages provision in § 4.02 supersedes the liquidated damages provision contained in the Amendments.

The difficulty of resolving this apparent contradiction is magnified by the fact that neither the Amendments nor the Inside Agreement contains a clause relative to resolving ambiguities between the two documents.[9] Although the date of the Inside Agreement providing for a ten percent penalty postdates the Amendments which provide for twenty percent liquidated damages, this Court cannot resolve, short of trial, which liquidated damages provision should be applied to determine the amount of owing liquidated damages. Whether the Amendments or the Inside Agreement controls will depend on the trier of fact's consideration of extrinsic evidence beyond the plain language of the documents. Therefore, the issue now presents this Court with a material factual dispute prohibiting a grant of summary judgment for either movant. *See, Wards Co., Inc. v. Stamford Ridgeway Associates*, 761 F.2d 117, 120 (2d Cir.1985) (summary judgment inappropriate where contractual language is susceptible of differing reasonable meanings) (relying on *Heyman v. Commerce And Industry Insurance Co.*, 524 F.2d 1317 (2d Cir. 1975)).

Finally, once the applicable liquidated damages provision is identified, an issue remains whether such provision is void as a penalty under federal common law. *See Michigan Carpenters*, 933 F.2d at 390; *Idaho Plumbers*, 875 F.2d at 217. With respect to this issue, assuming the twenty percent liquidated damages provision is otherwise enforceable, the Funds argue that since § 502 authorizes, *inter alia*, liquidated damages in an amount equivalent to twenty percent of unpaid contributions to a multiemployer plan, that the twenty percent liquidated damages provision contained in the Amendments, which is no higher than what Congress authorized under § 502, could not be void as a penalty. The Funds claim "... [b]y enacting Section 502 of ERISA, Congress, in effect, has found that a liquidated damages assessment not exceeding twenty percent (20%) to be enforceable as a matter of law and public policy." (Funds memo., p. 15). Zacher, however, argues that the twenty percent liquidated damages provision is void as a penalty.

This Court rejects the Funds' assertion for two reasons. First, as discussed above, § 502 applies only to delinquent contributions unpaid at the time a lawsuit for their recovery is filed or at the time a judgment for their recovery is obtained. This Court will not find that, as a matter of law, § 502 evinces Congress' intent as to the maximum percentage recovery of liquidated damages in cases, such as this, where § 502 by its own terms does not apply. Second, the enforceability of a contractual liquidated damages provision, such as that which the Funds seek to enforce in this case, depends, *inter alia*, on whether the amount fixed is a reasonable forecast of just compensation for the particular harm caused. *See* Second Restatement Contracts, § 339. This necessarily requires scrutiny of the facts and circumstances of each case; were this Court to hold that a twenty percent liquidated damages provision is enforceable as a matter of law, such

---

**9.** Although the Funds do not address the issue of resolving the apparent contradiction between the 20% "liquidated damages" provision contained in the Amendments and the 10% "penal- ty" provision contained in § 4.02 of the Inside Agreement, the Funds do not argue that the defendants are or could be subject to both provisions.

holding would ignore the necessary case specific inquiry. *See Idaho Plumbers* (decided after enactment of the MPPAA, the Ninth Circuit affirmed the district court's holding that a twenty percent liquidated damages provision, such as the one the Funds seek to apply in this case, constituted a penalty under federal common law.).

Therefore, because this Court concludes that a question of fact exists as to the applicable liquidated damages provision for delinquent contributions paid to the Funds representing work covered under the Inside Agreement, this Court denies the Funds' motion for summary judgment and Zacher's cross motion for summary judgment with respect to the issue of the Funds' recovery of liquidated damages.

### C. *Interest*

In Count One of the Amended Complaint and via their summary judgment motion, the Funds also seek interest representing twenty-four percent of delinquently paid contributions for the period from January 1987 to January 1988. The Funds predicate their right to this interest on a clause contained in the Amendments, providing that

> [i]n any action brought under ERISA ... for the recovery of delinquent contributions, ... the interest rate shall be an effective annual rate of approximately twenty-four percent (24%) ... of the unpaid contributions.

As noted above, the Amendments further provide that

> [i]n the event the Trustees do not initiate an action or the action is settled prior to a judgment being obtained, the Trustees may require the delinquent employer to pay interest from the due date of said contribution and liquidated damages up to the rates specified in the preceding paragraph.

(Franey, ¶ 5 and exh. 1 attached thereto). These are the same provisions which the Funds rely on with respect to the collection of liquidated damages and similarly Zacher challenges payment of twenty-four percent interest on several grounds.

First, Zacher argues that the Inside Agreement supersedes the Amendments and that the Inside Agreement provides for an undisclosed rate of interest. Therefore at minimum, Zacher argues, the Funds are not entitled to summary judgment on the twenty-four percent interest they seek. Second, Zacher argues that even if the Amendments govern the payment of interest on delinquent contributions, that they provide for an interest rate of "... approximately 24% ...." Since the applicable interest rate remains imprecise, Zacher contends that the Funds cannot gain summary judgment on the twenty-four percent interest allegedly owing. Third, Zacher argues a twenty-four percent interest rate is usurious under New York law and therefore void *ab initio*.

For the same reasons this Court denies the Funds' motion for summary judgment on their recovery of liquidated damages, this Court must deny the Funds' motion for summary judgment on their motion to recover twenty-four percent interest. Similarly, this Court must also deny Zacher's cross-motion. The Amendments and Inside Agreement both provide for payment of interest on delinquent contributions but are arguably inconsistent. This Court cannot resolve this factual dispute short of trial.

Despite the above quoted provisions contained in the Amendments, § 4.02 of the Inside Agreement, effected after the Amendments, provides that failure by an employer to submit due contributions to the Funds "... will result in the Employer being subject to ... [an] interest charge...." Although § 4.02 does not supply a rate of interest, it does not reference the interest rate in the Amendments. In fact, the Inside Agreement fails to reference the Amendments at all. While arguably the failure of § 4.02 to supply an interest rate constitutes an adoption of the Amendments' interest rate provision, albeit by silence, the provisions arguably are inconsistent and the later, undisclosed, interest rate applies. The trier of fact will need extrinsic evidence to resolve this dispute. *Wards Co.; Heyman, supra.*

Since a question of fact exists as to the applicable rate of interest on delinquent contributions, this Court need not and does not address the remainder of Zacher's arguments.

Therefore, because this Court concludes that a question of fact exists as to the applicable interest rate provision on delinquent contributions paid to the Funds representing work covered under the Inside Agreement, this Court denies the Funds' motion for summary judgment and Zacher's cross-motion for summary judgment with respect to the issue of Zacher's payment of interest for delinquent contributions to the Funds.

## II. The Funds' Entitlement To An Audit Or An Equitable Accounting (Count Two Of The Amended Complaint)

In Count Two of the Amended Complaint and via their summary judgment motion, the Funds allege that after January 1988 Zacher has failed to submit monthly reports and contributions to the Funds representing its employees, as required by various agreements. The Funds seek either an audit or an equitable accounting to gain "... payroll and wage information ..." enabling the Funds to calculate the amount of allegedly unpaid contributions. Specifically, the Funds seek a Court Order directing: 1) Zacher to produce for audit "... all books and records relative to the employees covered by the collective-bargaining agreement ..." since January of 1987; and 2) Zacher to file monthly reports for the periods from February 1988 to the present. (Amended Complaint, ¶ 18(B)).

### A. *Audit*

Zacher opposes a Court ordered Audit on two grounds.

■ First, Zacher contends that the Funds are not entitled to an audit because the Funds have failed to provide notice of their audit request to Zacher; according to Zacher the Declarations require that notice precede an audit. Second, even if notice were properly given, Zacher argues, the Funds' audit request is far too broad, exceeding the permissible scope of an audit

according to the Trust Agreements. Zacher argues that the Funds must restrict their audit request consistent with the Declarations.

Section 4 of each Declaration provides that

[e]ach Employer agrees that the Trustees shall have the right to require such reports as they deem necessary or desirable for the administration of the [relevant] Fund, and each Employer shall promptly furnish to the Trustees, on demand, records of Employees, names, social security numbers, hours worked by each Employee, and such other information as the Trustees may reasonably require in the administration of the Trust. For the purposes of compliance with this section, each Employer agrees to permit inspection of its payroll and wage records of the Employees on whose behalf contributions to the [relevant] Fund have or should be made upon receiving notice at reasonable hours, by the Trustees or their designee.

(Franey, exhs. 2, 3, 4).

The Funds do not dispute Zacher's contention that they tendered no notice of an audit to Zacher. (Zacher, ¶ 21). Rather, the Funds contend that the notice provision "... is only a reasonable qualification on the exercise of the right [to audit] and not a condition precedent to the exercise of the right to audit under the operative trust document." (Funds memo., p. 18). The Funds cite no authority for their contention.

This Court rejects the Funds' assertion that Zacher must submit to an audit absent notice. Such an interpretation contradicts the plain language of § 4 of the Declarations.

Therefore, this Court denies the Funds' motion for summary judgment with respect to Zacher's liability to submit to an audit pursuant to the Declarations. Moreover, this Court grants Zacher's motion for summary judgment with respect to its current liability to submit to an audit.

## B. *Equitable Accounting*

As noted above, the Funds alternatively seek an equitable accounting of "... all books and records relative to the employees covered by the collective bargaining agreement ..." to determine the amount of owing delinquent payments. (Amended Complaint, ¶ 18(B)).

Zacher opposes an equitable accounting on two primary grounds. First, Zacher argues that the Funds are not entitled to an equitable accounting since no fiduciary relationship exists between it and the Funds, and the remedy of an equitable accounting is unavailable absent this heightened relationship. Second, Zacher argues that even if a fiduciary relationship exists between it and the Funds, the Funds are not entitled to an equitable accounting because the Funds cannot establish any right, at least at this stage in the litigation, to an accounting under any of the agreements at issue in this case. In this regard, Zacher argues that since discontinuing payments to the Funds, none of the work performed by Zacher employees is covered under the Inside Agreement either because it is work covered under the Residential Agreement, and therefore not subject to the contribution and reporting requirements, or work beyond the scope of the Inside or Residential Agreements. (Zacher, ¶¶ 19–20). Therefore, Zacher argues it has no obligation to make contributions and reports to the Funds.

The Funds contend that by virtue of New York Lien Law Article 3–A, § 70, a trust by operation of law is imposed over monies which Zacher, as a contractor, received "... in connection with a contract for the improvement of real property or public improvement...." (Funds memo., p. 19). The Funds argue that Zacher's "contracting" business involves improvement to real property and pursuant to § 70 Zacher is a trustee of these monies. Next, pursuant to Lien Law § 71(2)(d), which provides that trust assets are held for and shall be applied toward payment of "... any benefits or wage supplements ... to the extent that the trustee, as employer, is obligated to pay or provide such benefits ... by any

agreement to which he is a party[,]" the Funds assert that the Inside Agreement obligates Zacher to make contributions to the Funds "... to be paid out of contract funds received from [Zacher's] customers." (Funds memo., p. 20). Therefore, the Funds argue that monies which Zacher received from its customers is impressed with a trust by operation of law under Lien Law §§ 70 & 71. Although the Funds do not cite or otherwise discuss this provision, Lien Law § 77 is the enforcement provision with respect to a trust created under the Lien Law. Under Lien Law § 77(3)(a)(iii), an action may be maintained for the "[d]etermination of the existence and amount of any trust asset or any trust claim...." Additionally, pursuant to Lien Law § 77(3)(a)(i), the holder of a trust claim may seek relief to "... compel an interim or final accounting by the trustee...." The Funds cite no authority in support of their claim to an equitable accounting under the Lien Law and Zacher nowhere addresses the Funds' Lien Law theory.

In *Sorge v. DeLillo Construction Co., Inc.*, 228 N.Y.S.2d 153 (Sup.Ct.Nassau County 1962), the only case this Court can locate on point, the New York Supreme Court held that certain union welfare funds ("welfare funds") were entitled to an equitable accounting under the Lien Law. In that case, the welfare funds were among the claimants to funds held by a contractor. The welfare funds claimed that certain collective bargaining agreements required the contractor to remit to them five percent of its total payroll. The Court found the welfare funds to be beneficiaries of a trust impressed by operation of Lien Law § 70 over funds received by the contractor in connection with a contract for public improvement. Moreover, under § 71(2)(d), the Court found that as "... benefits ..." which the collective bargaining agreement obligated the contractor to pay, the amounts sought by the welfare funds were impressed with the trust.

 To the extent that the Funds now seek payment of unpaid contributions pursuant to the Lien Law, this Court denies the Funds such relief. This Court cannot

order Zacher to pay monies to the Funds representing unpaid contributions pursuant to the Lien Law provisions discussed above because a question of fact exists as to whether, pursuant to § 71(2)(d), Zacher has improved real property incurring the expenditure of "payment of any benefits or wage supplements ... by any agreement to which [Zacher] is a party." Zacher contends that the Inside Agreement does not cover work performed by Zacher's employees since January 1988, the time Zacher ceased payment to the Funds, either because such work has been covered under the Residential Agreement,[10] and therefore not subject to the contribution and reporting requirements, or work beyond the scope of the Inside and Residential Agreements. (Zacher, ¶¶ 19–20).

However, Lien Law § 77(3)(a)(iii) authorizes an action for the "[d]etermination of the existence and amount of any trust asset or any trust claim...." This Court finds such relief to be appropriate in this case—Zacher should produce books and records relative to work performed by its employees under the Inside Agreement since January 1988, if indeed any such work has been performed, so that it can be determined whether Zacher owes contributions and reports to the Funds since January 1988, the time from which the Funds allege such submissions to be owing. So as to minimize the burden of such a production, Zacher should produce such documents during reasonable business hours for the Funds' inspection at Zacher's place of business. Until the Funds can demonstrate their right to receive reports, this Court will not order Zacher to file reports representing time periods after January 1988.

Therefore, this Court grants the Funds' motion for summary judgment motion with respect to Zacher's liability to submit to an accounting according to the terms outlined above and denies Zacher's cross-motion for summary judgment on that issue.

10. This Court notes that the evidence indicates that in 1989 Zacher terminated NECA's authori-

## CONCLUSION

For the reasons set forth above, this Court denies the Funds' motion for summary judgment and Zacher's cross-motion for summary judgment with respect to Zacher's payment of interest and liquidated damages for delinquent contributions to the Funds, Count One of the Amended Complaint. Additionally, this Court denies the Funds' motion for summary judgment and grants Zacher's cross-motion for summary judgment with respect to Zacher's liability to submit to an audit pursuant to the Declarations. Finally, this Court grants the Funds' motion for summary judgment and denies Zacher's cross-motion for summary judgment with respect to Zacher's liability to submit to an accounting pursuant to the New York Lien Law, in accordance with the terms discussed above.

## ORDER

IT HEREBY IS ORDERED, that with respect to Count One of the Amended Complaint, this Court DENIES the plaintiffs' motion for summary judgment and DENIES the defendants' cross-motion for summary judgment.

FURTHER, that with respect to Count Two of the Amended Complaint, this Court DENIES IN PART and GRANTS IN PART the plaintiffs' motion for summary judgment as follows: this Court denies the plaintiffs' motion insofar as plaintiffs seek an audit pursuant to contract; this Court grants the plaintiffs' motion insofar as plaintiffs seek an accounting pursuant to New York law. Also with respect to Count Two of the Amended Complaint, this Court DENIES IN PART and GRANTS IN PART the defendants' motion for summary judgment as follows: this Court grants the defendants' motion insofar as it opposes an audit pursuant to contract; this Court denies the defendants' motion insofar as defendants oppose an accounting pursuant to New York law.

FURTHER, that this Court shall hold a status conference in the above captioned case on September 24, 1991 at Part IV,

ty to collectively bargain for Zacher under the Residential Agreement.

Mahoney Building, 65 Court Street, Buffalo, New York at 11:00, a.m. Counsel for the parties should be prepared to discuss a trial schedule.

SO ORDERED.