**IRON WORKERS DISTRICT COUNCIL OF WESTERN NEW YORK AND VICINITY WELFARE AND PENSION FUNDS, by Constance B. Peters, as Administrative Manager; Iron Workers Local 33 Joint Apprenticeship Committee Apprentice Training Fund, by Thomas Helfrich, William Shaw, Michael Downey, and Dean Long, as Trustees; and Iron Workers Local Union No. 33, by Michael Downey, as Business Agent, Plaintiffs–Appellants,**

v.

**HUDSON STEEL FABRICATORS & ERECTORS, INC., Defendant–Appellee.**

No. 1774, Docket No. 95–7051.

United States Court of Appeals, Second Circuit.

Argued June 16, 1995.

Decided Oct. 27, 1995.

Jennifer A. Clark, Syracuse, New York (Blitman & King, Syracuse, New York, of counsel), for Plaintiffs–Appellants.

Before: WINTER, MAHONEY, and JACOBS, Circuit Judges.

MAHONEY, Circuit Judge:

Plaintiffs-appellants Iron Workers District Council of Western New York and Vicinity Welfare and Pension Funds, by Constance B. Peters, as Administrative Manager (the "Welfare and Pension Funds"), Iron Workers Local 33 Joint Apprenticeship Committee Apprentice Training Fund, by Thomas Helfrich, William Shaw, Michael Downey, and Dean Long, as Trustees (the "Training Fund") (collectively the "Funds"), and Iron Workers Local Union No. 33 of the International Association of Bridge, Structural and Ornamental Iron Workers, by Michael Downey, as Business Agent (the "Union") appeal

from a judgment entered February 14, 1995 in the United States District Court for the Western District of New York, Michael A. Telesca, *Chief Judge.* Their appeal brings up for review a determination by the district court that in an action to enforce the obligation imposed by 29 U.S.C. § 1145[1] to make contributions in accordance with the requirements of a multiemployer plan or a collective bargaining agreement, the statutory remedies provided by 29 U.S.C. § 1132(g)(2)[2] were not available because all delinquent contributions owed by defendant-appellee Hudson Steel Fabricators & Erectors, Inc. ("Hudson") under certain multiemployer plans had been paid after suit was filed but prior to judgment. Plaintiffs-appellants also contest the district court's reduction to fourteen percent of the twenty-four percent annual rate of interest specified in a "Collections Policy" adopted by the Trustees of the Welfare and Pension Funds upon finding that the payment of interest at the Collections Policy rate, in combination with the payment of liquidated damages of twenty percent, constituted a penalty, rather than a reasonable forecast of damages, under federal common law.

Agreeing with the contentions of plaintiffs-appellants, we vacate the judgment of the district court and remand for further proceedings.

## Background

The Funds were established pursuant to certain agreements and declarations of trust and are multiemployer plans as defined in § 3(37) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1002(37), and employee benefit plans as defined in § 3(3) of ERISA, 29 U.S.C. § 1002(3). The Union is an unincorporated association and a labor organization in an industry affecting commerce within the meaning of the Labor–Management Relations Act of 1947, as amended. *See* 29 U.S.C. §§ 142(1), 152(5), (6), (7).

Prior to the commencement of this lawsuit, Hudson had entered into a collective bargaining agreement (the "CBA") with the Union which obligated Hudson to make specified payments to the Funds on a monthly basis, and provided that: "In addition to any other remedies at law to which the parties may be entitled, an Employer in default for a period of one (1) month or more may be required to pay liquidated damages of 20 percent of the amount due and owing, plus audit costs, attorney fees and expenses and court costs." The CBA also incorporated by reference the agreements and declarations of trust that established the Welfare and Pension Funds.

Pursuant to the authority vested in them by these agreements and declarations of trust, the trustees of the Welfare and Pension Funds had adopted a "Collections Policy" which provided that unless employer contributions were received by "the 30th of the month following the month during which hours are worked and for which contributions are required," then "interest, liquidated damages of 20 percent, auditing fees, costs and any attorneys' fees and costs shall be due, in addition to the delinquent contributions." The Collections Policy stipulated that the interest rate would be two percent per month

1. Section 1145 provides:

   Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

2. Section 1132(g)(2) provides:

   In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—
   (A) the unpaid contributions,

   (B) interest on the unpaid contributions,
   (C) an amount equal to the greater of—
   (i) interest on the unpaid contributions, or
   (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
   (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
   (E) such other legal or equitable relief as the court deems appropriate.
   For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

"from the date on which the contributions were due." The Collections Policy did not apply to the Training Fund, and interest on delinquent contributions thereunder was assessed at rates of nine and ten percent. Interest on delinquent union dues was assessed at a rate of nine percent.

At the time plaintiffs-appellants commenced this action in December 1991, Hudson was substantially delinquent with respect to required contributions to the Funds, and additional delinquencies occurred during the course of the litigation. Plaintiffs-appellants filed a motion for summary judgment on September 15, 1992. On November 2, 1992, two days prior to the argument of that motion, Hudson paid all delinquent contributions to the Funds. Because no unpaid contributions remained outstanding, the district court ruled that it could not award "judgment in favor of the plan" within the meaning of 29 U.S.C. § 1132(g)(2), *see supra* note 2, and denied plaintiffs-appellants summary judgment under that provision in a decision and order dated January 11, 1993. *See Iron Workers Dist. Council Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.,* No. 91–CV–6517T, slip op. at 4–5 (W.D.N.Y. Jan. 11, 1993) ("*Iron Workers I* "). The court further ruled that summary judgment could not be awarded on the CBA and related agreements by which Hudson was bound because the court was required to determine "whether the provisions concerning liquidated damages and interest in the relevant agreements constitute a penalty under federal common law," *id.* at 6, a triable issue of fact. *Id.* at 6–7.

Plaintiffs-appellants renewed their motion for summary judgment at the conclusion of discovery, but the district court adhered to its prior ruling in a decision and order dated July 28, 1994. *Iron Workers Dist. Council Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.,* No. 91–CV–6517T, slip op. (W.D.N.Y. July 28, 1994) ("*Iron Workers II* "). After a two-day bench trial, the court reiterated in a decision and order dated December 16, 1994 that the stat-

utory remedy was unavailable because "Congress intended the statutory penalties of 29 U.S.C. § 1132 to apply solely to unpaid contributions on the date of *judgment.*" *Iron Workers Dist. Council Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.,* No. 91–CV–6517T, slip op. at 7 (W.D.N.Y. Dec. 16, 1994) ("*Iron Workers III* "). Applying "the federal common law of damages," *id.* at 8, the court ruled that the liquidated damages provision of twenty percent specified in the CBA and the Collections Policy was reasonable, *id.* at 10, as was the interest rate of nine to ten percent imposed upon delinquent contributions to the Training Fund, *id.* at 12.

The court rejected Hudson's contention that interest could not be imposed under the Collections Policy because the relevant CBA provision made no reference to interest, *id.* at 11, but ruled that the interest rate of twenty-four percent imposed by the Collections Policy upon delinquent contributions to the Welfare and Pension Funds "was unreasonable and, in combination with the liquidated damages provision, constituted a penalty under federal common law," *id.* at 12. An interest rate of fourteen percent was substituted, *id.,* attorney fees and costs, as well as audit fees, were awarded, *id.* at 12–13, and judgment was entered accordingly.[3]

This appeal by the Funds and the Union followed. Hudson does not contest this appeal, and accordingly did not file a brief or participate in the oral argument of the appeal.

### Discussion

As previously noted, plaintiffs-appellants contest only the district court's denial of the remedies provided by § 1132(g)(2) and the reduction of the interest rate allowed with respect to delinquent contributions to the Welfare and Pension Funds. *See supra* note 3.

As originally enacted in 1974, § 1132(g) simply provided that "[i]n any action ... by a ... fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of

---

**3.** Monetarily, plaintiffs-appellants seek on this appeal only the additional ten percent interest denied by the district court with respect to delin-

quent contributions to the Welfare and Pension Funds, an amount totalling (by their uncontested calculation) $5,906.86.

action to either party." The section was amended in 1980 by relabeling the previous text as subsection (1), adding current subsection (2), and adding an exception for actions under subsection (2) to subsection (1). *See Carpenters Amended & Restated Health Benefit Fund v. John W. Ryan Constr. Co.*, 767 F.2d 1170, 1172 n. 3 (5th Cir.1985); *Central States, Southeast & Southwest Areas Pension Fund v. Alco Express Co.*, 522 F.Supp. 919, 921–23 (E.D.Mich.1981). Congress thereby made the award of attorney fees mandatory for suits involving delinquent employers, *see Building Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1400 (6th Cir.1995), and added the current slate of mandatory penalties to be assessed in favor of a plan obtaining a favorable judgment. *See Central States, Southeast & Southwest Areas Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148, 1156 (7th Cir.1989) (in banc); *Carpenters Amended & Restated Health Benefit Fund*, 767 F.2d at 1173.

A staff report of the Senate Committee on Labor and Human Resources explained with respect to these amendments that:

> "Delinquencies of employers in making required contributions are a serious problem for most multiemployer plans. Failure of employers to make promised contributions in a timely fashion imposes a variety of costs on plans....
>
> ....
>
> Recourse available under current law for collecting delinquent contributions is insufficient and unnecessarily cumbersome and costly. Some simple collection actions brought by plan trustees have been converted into lengthy, costly and complex litigation concerning claims and defenses unrelated to the employer's promise and the plans' entitlement to the contributions. This should not be the case. Federal pension law must permit trustees of plans to recover delinquent contributions efficaciously. ...
>
> The public policy of this legislation to foster the preservation of the private multiemployer plan system mandates that provision be made to discourage delinquencies

and simplify delinquency collection.... A plan sponsor that prevails in any action to collect delinquent contributions will be entitled to recover the delinquent contributions, court costs, attorney's fees, and double interest on the contributions owed. The intent of this section is to promote the prompt payment of contributions and assist plans in recovering the costs incurred in connection with delinquencies."

*Alco Express Co.*, 522 F.Supp. at 927–28 (quoting Staff of Sen. Comm. on Labor and Human Resources, 96th Cong., 2d Sess., S. 1076, *The Multiemployer Pension Plan Amendments of 1980: Summary and Analysis of Consideration* (Comm.Print 1980) 43–44).

The Sixth Circuit has stated, with regard to the initial passage of the enforcement provisions of § 1132 in 1974, that: "The legislative history ... indicates that Congress intended that the enforcement provisions should have teeth: the provisions should be liberally construed 'to provide both the Secretary and participants and beneficiaries with broad remedies for redressing or preventing violations of the Act.'" *Laborers Fringe Benefit Funds Detroit & Vicinity v. Northwest Concrete & Constr., Inc.*, 640 F.2d 1350, 1352 (6th Cir.1981) (per curiam) (quoting H.R.Rep. No. 533, 93d Cong., 2d Sess. 17, *reprinted in* 1974 U.S.C.C.A.N. 4639, 4655).

Consistent with these congressional and judicial statements of purpose, the Fifth, Seventh, Eighth, and Ninth Circuits have held or indicated that an employer cannot escape its statutory liability for interest, liquidated damages or double interest, attorney fees, and costs simply by paying the delinquent contributions before entry of judgment in a § 1132(g)(2) action brought to recover delinquent contributions. *See Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mechanical Contractors, Inc.*, 875 F.2d 212, 215 (9th Cir.1989) (stating that § 1132(g)(2)(C)(ii) "applies when (1) the fiduciary obtains a judgment in favor of the plan, (2) *unpaid* contributions exist at the time of suit, and (3) the plan provides for liquidated damages," and concluding that liquidated damage provision does not apply when all

contributions had been paid before suit was filed); *Carpenters & Joiners Welfare Fund v. Gittleman Corp.,* 857 F.2d 476, 478 (8th Cir.1988) (finding "correct interpretation of the plain language of the statute" to mean that term "unpaid contributions" means "contributions unpaid at the time suit was filed," and denying liquidated damages under § 1132(g)(2)(C)(ii) when all contributions had been paid before suit was filed); *Carpenters Amended & Restated Health Benefit Fund,* 767 F.2d at 1171–75 (5th Cir.1985) (ruling that employer could not avoid award of statutory interest and attorney fees under § 1132(g)(2) through post-filing, prejudgment payment of the delinquent contributions); *Gilles v. Burton Constr. Co.,* 736 F.2d 1142, 1146 n. 6 (7th Cir.1984) ("After suit is filed, we doubt that employers who are delinquent in their contributions can avoid the mandatory relief provisions of section 1132(g)(2) through the device of offering to pay only the overdue contributions. A settlement will require the agreement of the parties on the entire case—not merely part of the case.").

The district court relied upon *Michigan Carpenters Council Health & Welfare Fund v. C.J. Rogers, Inc.,* 933 F.2d 376, 388–89 (6th Cir.), *cert. denied,* 502 U.S. 982, 112 S.Ct. 585, 116 L.Ed.2d 610 (1991), to rule that § 1132(g)(2) did not apply because Hudson had paid its delinquent contributions prior to judgment. *See Iron Workers III,* slip op. at 3–7. *Michigan Carpenters Council,* explicitly rejecting *Idaho Plumbers & Pipefitters Health & Welfare Fund, Carpenters & Joiners Welfare Fund,* and *Carpenters Amended & Restated Health Benefit Fund* (as well as three similar district court rulings), *see Michigan Carpenters Council,* 933 F.2d at 388–89, and citing no authority in support of its position, *see id.,* reasoned that:

> The section provides that upon "a *judgment* in favor of the plan" the court shall award the plan "*the* unpaid contributions" and "interest on *the* unpaid contributions." 29 U.S.C. § 1132(g)(2)(A) & (B). Thus it is clear that the provisions of that section apply only if there were unpaid contributions on the date of the award.

*Michigan Carpenters Council,* 933 F.2d at 388 (emphasis added in *Michigan Carpenters Council*).

■ We see no reason to limit the availability of relief under § 1132(g)(2) in this manner. Section 1132(g)(2) requires only that a "judgment in favor of the plan" be obtained by a fiduciary "[i]n any action ... to enforce § 1145." *See supra* note 2. Section 1145 requires "[e]very employer who is obligated to make contributions to a multiemployer plan" to do so "in accordance with the terms and conditions of such plan or [collective bargaining] agreement." *See supra* note 1. The terms and conditions of the CBA and Collections Policy obligated Hudson to pay liquidated damages, attorney fees, auditing fees, and interest on payments more than fifteen days late. The Funds sued seeking all of these modes of compensation, and were entitled to a "judgment in favor of the Plan" with respect to any of them that had not been fully satisfied. *See Carpenters Amended & Restated Health Benefit Fund,* 767 F.2d at 1173–74.

■ We conclude that § 1132(g)(2) does not require that a favorable judgment be awarded on each of the four items of relief specified therein. It simply directs that once there is a favorable judgment, the plaintiff is entitled to all the measures of relief not already obtained. In other words, the action must be one to enforce the obligation to pay contributions under § 1145, and therefore no such suit can be commenced in the absence of unpaid contributions; but the judgement under § 1132(g)(2) will necessarily reflect fewer than all of the forms of relief available under that provision if partial relief has been obtained by way of paid-up contributions. Thus, the provisions of § 1132(g)(2)(B) and (C) make reference to unpaid contributions not to establish a limit on qualifying judgments, but rather because the amount of an award of interest or liquidated damages should logically be predicated upon the amount of the unpaid contributions originally at issue, whether or not outstanding at the time of judgment, since that amount correctly measures the damage caused by the delinquency.

Permitting delinquent employers to avoid paying § 1132 penalties after suit is filed, and particularly waiting until two days prior to the argument of the plaintiffs' motion for summary judgment, as here, would largely thwart the purpose of § 1132(g)(2) to provide plan fiduciaries with an effective weapon against delinquent employers. *See Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 314 (2d Cir.) ("Simply put, benefit plans must be able to rely on the contribution promises of employers because plans must pay out to beneficiaries whether or not employers live up to their obligations."), *cert. denied,* 498 U.S. 982, 111 S.Ct. 511, 112 L.Ed.2d 524 (1990). It would also anomalously cause only employers with legitimate legal arguments (and therefore awaiting final judgment) to pay ancillary relief.

■ We turn to the monetary issue posed by this appeal. *See supra* note 3. Because § 1132(g)(2) directs that preferentially, "interest on unpaid contributions shall be determined by using the rate provided under the plan," *see supra* note 2, and the Collections Policy validly adopted by the trustees of the Welfare and Pension Plans specified an interest rate of two percent per month for delinquent contributions to those plans, we disagree with the district court's determination that the assessment of interest resulted in an illegal penalty under federal common law. The district court cited *Board of Trustees of Local 41, International Brotherhood of Electrical Workers Health Fund v. Zacher,* 771 F.Supp. 1323, 1334 (W.D.N.Y.1991), in support of this ruling, *see Iron Workers I,* slip op. at 6, but in *Zacher,* unlike here, "[s]ection 502(g) d[id] not by its own terms cover the situation in th[at] case, where contributions to the plan ha[d] been paid prior to suit." *Zacher,* 771 F.Supp. at 1332; *see also Parise v. Riccelli Haulers, Inc.,* 672 F.Supp. 72, 75 (N.D.N.Y.1987) (default judgment requiring payment of interest of twenty-four percent pursuant to § 502(g)(2)(B) and in accordance with the provisions of collective bargaining agreement); *Lewart v. Woodhull Care Ctr. Assocs.,* 549 F.Supp. 879, 884 & n. 2 (S.D.N.Y.1982) (same, summary judgment, eighteen percent); *cf. Hammond v. James W. Griffin Co.,* 520 F.Supp. 162, 167 (N.D.Ga.

1981) (interest paid pursuant to § 1132(g)(2) is not a penalty).

## Conclusion

The judgment of the district court is vacated and the case is remanded for further proceedings consistent with this opinion.