**Adrian HUFF, as Chairman of the Board of Trustees of Teamsters Local 445 Construction Division Welfare, Pension and Annuity Funds and Teamsters Local 445 Education and Training Fund, Plaintiff,**

v.

**CRUZ CONTRACTING CORP., Defendant.**

**No. 07–CV–641 (KMK).**

United States District Court, S.D. New York.

Jan. 29, 2009.

William David Frumkin, Esq., Sapir & Frumkin LLP, White Plains, NY, for Plaintiff.

Ronald L. Tobia, Esq., Tobia & Sorger Esqs., LLC, Harrison, NJ, for Defendant.

## OPINION AND ORDER

KENNETH M. KARAS, District Judge.

Plaintiff Adrian Huff, as Chairman of the Board of Trustees of Teamsters Local 445 Construction Division Welfare, Pension and Annuity Funds and Teamsters

Local 445 Education and Training Fund ("Plaintiff" or "Funds"), filed this action against Defendant Cruz Contracting Corp. ("Defendant" or "Cruz") pursuant to the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, and the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, seeking principally an award of late fees from Defendant's alleged failure to make timely contribution payments to the Funds.[1] Before the Court are Plaintiff's motion for summary judgment and Defendant's cross-motion for partial summary judgment on Plaintiff's claim for statutory damages pursuant to 29 U.S.C. § 1132(g)(2) ("Section 1132(g) (2)").

## I. Background

The Court assumes the Parties' familiarity with the factual and procedural background of this case as it is thoroughly set forth in Magistrate Judge Lisa Margaret Smith's Report & Recommendation dated May 1, 2008 ("R & R").[2] In her R & R, Magistrate Judge Smith recommended that the Court deny Plaintiff's motion for summary judgment awarding Plaintiff either statutory or contractual damages, and that the Court grant Defendant's cross-motion for partial summary judgment dismissing Plaintiff's claim for statutory damages pursuant to Section 1132(g)(2). (R & R 27.) Plaintiff filed timely objections to the R & R.

## II. Discussion

### A. Standard of Review

#### 1. Review of Magistrate Judge's Report & Recommendation

A district court reviewing a magistrate judge's report and recommendation addressing a dispositive motion "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also Donahue v. Global Home Loans & Fin., Inc.*, No. 05–CV–8362, 2007 WL 831816, at *1 (S.D.N.Y. Mar. 15, 2007). Under 28 U.S.C. § 636(b) (1) and Federal Rule of Civil Procedure 72(b), parties may submit objections to the magistrate judge's report and recommendation. The objections must be "specific" and "written," Fed.R.Civ.P. 72(b)(2), and must be made "[w]ithin 10 days after being served with a copy of the recommended disposition," *id.*; *see also* 28 U.S.C. § 636(b)(1), plus an additional three days when service is made pursuant to Fed.R.Civ.P. 5(b)(2)(C)-(F), *see* Fed.R.Civ.P. 6(d), as was the case here (R & R 365–66).

Where a party submits timely objections to a report and recommendation—as Plaintiff did here, by submitting objections on May 20, 2008—the district court reviews de novo the parts of the report and recommendation to which the party objected. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b)(3); *Donahue*, 2007 WL 831816, at *1. The district court "may adopt those portions of the ... report [and recommendation] to which no 'specific written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Eisenberg v. New England Motor Freight, Inc.*, 564 F.Supp.2d 224, 226 (S.D.N.Y. 2008) (quoting Fed.R.Civ.P. 72(b)(2)).

**1.** The action was originally filed by Douglas L. McCauley, now deceased, who was Plaintiff's predecessor as chairman. Adrian Huff was substituted as Plaintiff by stipulation on August 3, 2007. In addition, Defendant was originally named in the Complaint as "Cruz Contracting Co."; the caption was amended by stipulation on November 21, 2007.

**2.** The case was referred to Magistrate Judge Smith for all purposes on January 26, 2007. The case was assigned to this Court on August 6, 2007.

### 2. Motion for Summary Judgment

Summary judgment may be granted when it is shown that there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir.2003). "When considering cross-motions for summary judgment, a court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Make the Road by Walking, Inc. v. Turner*, 378 F.3d 133, 142 (2d Cir.2004) (internal quotation marks omitted). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Atlantic Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir.2005). "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim. In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir.2008) (internal citations omitted). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (footnote omitted); *see also McPherson v. N.Y. City Dep't of Educ.*, 457 F.3d 211, 215 n. 4 (2d Cir.2006) ("[S]peculation alone is insufficient to defeat a motion for summary judgment.").

### B. Analysis

### 1. Cross–Motions for Summary Judgment on Claim for Statutory Damages Pursuant to Section 1132(g)(2)

Plaintiff moved for summary judgment on the Funds' claim for statutory damages pursuant to Section 1132(g)(2), contending that there was no genuine issue of material fact as to Defendant's obligation under an existing collective bargaining agreement ("CBA") to make timely contributions to the Funds or as to Defendant's delinquency in paying its contributions owed between May 2005 and September 2006. (Pl.'s Mem. of Law in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mem.") 2–3.) Plaintiff argued that, as a matter of law, because Defendant was delinquent in its obligations and because Plaintiff "brought the instant action to enforce the terms of the CBA in accordance with [29 U.S.C. § 1145]," the Funds were "statutorily entitled," under Section 1132(g)(2), to "(a) interest on the unpaid contributions; (b) liquidated damages not to exceed twenty percent; [and] (c) reasonable attorney's fees and costs of the action." (Pl.'s Mem. 6.) Defendant, opposing Plaintiff's motion for summary judgment and cross-moving for partial summary judgment, argued that because it was undisputed that all of Defendant's contributions were paid prior to Plaintiff's filing of the action, Section 1132(g)(2) provided no grounds for relief as a matter of law. (Def.'s Letter Br. in Opp'n to Pl.'s Mot. for Summ. J. ("Def.'s Br.") 4–5.) Magistrate Judge Smith concluded that Defendant's interpretation of Section 1132(g)(2) was correct, and recommended that the Court (1) deny Plaintiff's motion for summary judgment on the Funds' claim for statutory damages, and (2) award Defendant par-

tial summary judgment on that claim. (R & R 357–60, 365.) Plaintiff submitted a specific written objection to this recommendation. (Pl.'s Mem. of Law in Supp. of Objections to R & R ("Pl.'s Obj.") 4–9.) For the following reasons, and for those stated in the R & R, the Court denies Plaintiff's motion for summary judgment and grants Defendant's motion for partial summary judgment.

Employers must follow CBA-dictated terms in making contributions to multiemployer pension plans: "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145 ("Section 1145"). ERISA also specifies the types of relief that should be awarded to such a pension plan in an action to enforce the Section 1145 right to contributions in accordance with CBA terms:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—
>
> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,
>
> (C) an amount equal to the greater of—
>
> (i) interest on the unpaid contributions, or
>
> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

■ The Second Circuit has held that a plaintiff bringing suit pursuant to Section 1132(g)(2) need not demonstrate that contributions remain unpaid as of the date of judgment. "[Section] 1132(g)(2) does not require that a favorable judgment be awarded on each of the four items of relief specified therein." *Iron Workers Dist. Council of W. New York v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1507 (2d Cir.1995). "It simply directs that once there is a favorable judgment, the plaintiff is entitled to all the measures of relief not already obtained." *Id.* Otherwise, an employer could "escape its statutory liability for interest, liquidated damages or double interest, attorney fees, and costs simply by paying the delinquent contributions" after being sued but "before entry of judgment," *id.* at 1506, a result that "would largely thwart the purpose of § 1132(g)(2) to provide plan fiduciaries with an effective weapon against delinquent employers," *id.* at 1508.

■ The issue here, however, is whether a plaintiff can maintain a claim for relief pursuant to Section 1132(g)(2)(B)-(E) when the complained-of delinquent contributions have been fully paid not only prior to judgment but also prior to filing of the Section 1132(g)(2) action, as is undisputed in this litigation (Pl.'s Obj. 5). This issue has apparently never been squarely considered by a court in the Southern District of New York, and Plaintiff directs the Court to no authority for sustaining a claim for Section 1132(g)(2) liability in such a situation. The Second Circuit appears to have suggested a resolution to the issue in dicta in *Iron Workers*, noting that

such a claim could not lie unless contributions were unpaid at the time of filing: "[T]he action must be one to enforce the obligation to pay contributions under § 1145, and therefore no such suit can be commenced in the absence of unpaid contributions ...." *Iron Workers*, 68 F.3d at 1507. However, the *Iron Workers* court was considering a case where delinquent contributions were paid between filing and judgment, and the opinion never clearly specified that delinquent contributions paid prior to filing could no longer constitute "unpaid contributions" for statutory purposes; arguably, the court's statement that "the amount of an award of interest or liquidated damages should logically be predicated upon the amount of the unpaid contributions *originally at issue,*" *id.* (emphasis added), might suggest that the court contemplated all delinquent contributions to be "unpaid" within the meaning of the statute.

Plaintiff contends that "this Court should expand the holding in *Iron Workers* to include situations where delinquent contributions are paid in full immediately prior to the commencement of a lawsuit," because a contrary decision, while consistent with "the plain language of 29 U.S.C. § 1132(g)(2)[,] allows employers to avoid their obligation to make timely payments under a collective bargaining agreement." (Pl.'s Obj. 5.)

The Court declines to do so. The most natural reading of the *Iron Workers* dicta is that adopted by Magistrate Judge Smith (R & R ——)—as well as by Judge Buchwald, who has held, in granting summary judgment to plaintiff trustees on their Section 1132(g)(2) claim, that they "may not recover interest or liquidated damages based on contributions paid in full at the start of this lawsuit," *Trs. of Bldg. Serv. 32B–J Health Fund v. Triangle Servs., Inc.,* 05–CV–2546, 2006 WL 3408572, at *3 n. 14 (S.D.N.Y. Nov.22,

2006); *see also id.* at *3 ("Plaintiffs are directed to submit a proposed judgment settling their claims for interest, liquidated damages, attorney's fees and costs, covering *only* those contributions still owed when plaintiffs filed this lawsuit ...."). Magistrate Judge Smith's interpretation is further supported by the Third Circuit, which recently cited *Iron Workers* as having held that "§ 1132(g)(2) remedies apply to all contributions that are unpaid at the time a plan files suit," *UAW Local 259 Soc. Sec. Dep't v. Metro Auto Ctr.,* 501 F.3d 283, 289 (3d Cir.2007).

Other courts, including district courts within the Second Circuit, have independently, and explicitly, reached the same conclusion. *See Operating Eng'rs Local 139 Health Benefit Fund v. Gustafson Const. Corp.,* 258 F.3d 645, 654 (7th Cir. 2001) ("The interest and liquidated-damages provisions of ERISA apply ... only to contributions that are unpaid at the date of suit ...."); *Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mech. Contractors, Inc.,* 875 F.2d 212, 215 (9th Cir.1989) ("Because no contributions were 'unpaid' at the time of this suit, § 1132(g)(2) does not apply."); *Carpenters & Joiners Welfare Fund v. Gittleman Corp.,* 857 F.2d 476, 478 (8th Cir.1988) (interpreting "the term 'unpaid contributions' ... to mean contributions unpaid at the time suit was filed, rather than contributions which were delinquent for some time but which were paid up before suit was filed"); *Finkel v. INS Elec. Servs. Inc.,* No. 06–CV–4862, 2008 WL 941482, at *5 (E.D.N.Y. Apr. 4, 2008) ("[P]laintiff has no right under ERISA to seek damages for those delinquent contributions that were paid prior to the suit being filed...."); *Farrell v. Metro. Relocations Inc.,* No. 95–CV–557, 1996 WL 19223, at *4 (E.D.N.Y. Jan 11, 1996) ("[S]tatutory liquidated damages are not recoverable when the employer, although delinquent, makes

payment prior to commencement of suit.") ³; *Bd. of Trs. of Local 41, Int'l Bhd. of Elec. Workers Health Fund v. Zacher*, 771 F.Supp. 1323, 1332 (W.D.N.Y.1991) ("[A]n ERISA plaintiff may not recover statutory liquidated damages, that is, pursuant to § [1132](g)(2)( [C] )(ii), for delinquent contributions ... where the contributions, although delinquent, have been paid ... prior to commencement of suit ....").

Furthermore, while the Court agrees with Magistrate Judge Smith's assessment that "the policy justifications highlighted by the Funds in support of its expanded reading of § 1132(g)(2) are compelling" (R & R 359), it bears noting that barring Section 1132(g)(2) claims where there are no unpaid contributions at the time of filing does not thwart the statute's purposes to the same extent as barring such claims where delinquent contributions are paid after filing but before an award. While the Sixth Circuit permits an employer to avoid Section 1132(g)(2) liability by not paying delinquent contributions until the last possible moment, *see Mich. Carpenters Council Health & Welfare Fund v. C.J. Rogers, Inc.*, 933 F.2d 376, 388 (6th Cir.1991) (adopting the minority view that "the provisions of [Section 1132(g)(2) ] apply only if there were unpaid contributions on the date of the award"), employers under the *Iron Workers* rule could only play such a game successfully if they somehow knew when lawsuits were about to be filed against them—information not typically available to a potential defendant.

Though the rule advocated by Plaintiff would certainly provide greater protection for pension funds, the current law is not completely devoid of deterrent effect. In any event, this Court is not at liberty to impose Plaintiff's proposed extension of Section 1132(g)(2) in light of its plain meaning and the Second Circuit's contrary statements. Instead, this is a task for Congress.

Accordingly, because it is undisputed that Defendants paid all delinquent contributions to the Funds prior to the filing of this action, the Court denies Plaintiff's motion for summary judgment on its claim for Section 1132(g)(2) damages, and grants Defendant's motion for partial summary judgment on that claim.⁴ Plaintiff's claim for Section 1132(g)(2) damages is dismissed.

### 2. *Plaintiff's Motion for Summary Judgment on Contractual Damages Claim*

█ Plaintiff has also moved for summary judgment on the Funds' claim for contractual liquidated damages and legal fees pursuant to the CBA, asserting that no genuine issue of material fact exists as to Defendant's obligation to pay such damages. (Pl.'s Mem. 7–8.) Plaintiff asserts: "The CBA allows for the recovery of a ten percent late charge on each delinquent contribution to the Funds. The CBA also allows for collection of legal fees. This language is confirmed by the earnings reports issued to and signed by Defendant each month it paid its contributions to the

---

**3.** The *Farrell* court apparently was not aware of the then-recent decision in *Iron Workers. See Farrell*, 1996 WL 19223, at *5 (stating that "[t]he Second Circuit has not addressed th[e] issue" of "whether ... the statute applies to contributions paid after filing of the suit but prior to judgment").

**4.** On the issue of whether Defendant's cross-motion for summary judgment was procedur-

ally defective, an issue raised by Plaintiff's reply brief (Mem. of Law in Reply to Def.'s Opp'n to Pl.'s Mot. for Summ. J. 7–8), the Court notes briefly that Plaintiff did not object to Magistrate Judge Smith's conclusion that denial of Defendant's cross-motion for noncompliance with procedural rules was unwarranted (R & R 365 n. 8). The Court finds that this conclusion was not clearly erroneous.

Funds." (*Id.* (internal citations omitted).) Defendant disputes this conclusion, stating that "there exists [sic] genuine issues of material fact as to whether Plaintiffs are entitled to contractually assess a ten percent (10%) late charge." (Def.'s Br. 4.) Magistrate Judge Smith concluded that Plaintiff was not entitled to summary judgment on the Funds' claim for contractual damages, because while such damages were not preempted by ERISA, "the plain language of the CBA's provisions do not provide . . . for such an award of damages under the undisputed facts of this case." [5] (R & R 360.) Plaintiff's timely objections to the R & R did not address Magistrate Judge Smith's recommendation as to this claim; rather, they focused only on the R & R's recommendation with respect to Plaintiff's claim for statutory damages. Thus, this Court reviews Magistrate Judge Smith's recommendation regarding this issue for clear error only. Finding none,

the Court adopts the R & R's conclusion that summary judgment for Plaintiff as to the Funds' claim for contractual damages must be denied.

■ Defendant has clearly disputed Plaintiff's assertions that the CBA imposed a ten-day deadline for Defendant to pay its required monthly contributions to the Funds for the previous month (Def.'s Resp. to Pl.'s Statement of Material Facts ¶¶ 3–4), and—more importantly, given Magistrate Judge Smith's finding that Defendant conceded the delinquency of its payments [6]—that Plaintiff was entitled to collect the late charges that Plaintiff claims that Defendant incurred (*id.* ¶¶ 6–7, 10–11). For the reasons stated by Magistrate Judge Smith (R & R 22–25), the Court finds that the plain language of the CBA does not entitle Plaintiff to contractual damages as a matter of law. Accordingly, Plaintiff's motion for summary judg-

5.  Neither Party objected to Magistrate Judge Smith's conclusion that Plaintiff's contract claim was not preempted by ERISA (R & R 360–61). Nonetheless, the Court has considered this point and finds that Magistrate Judge Smith did not err. *See Finkel,* 2008 WL 941482, at *5 ("Although plaintiff has no right under ERISA to seek damages for those delinquent contributions that were paid prior to the suit being filed . . ., the LMRA provides a statutory basis for recovering damages for those untimely contributions in violation of the CBA."); *Zacher,* 771 F.Supp. at 1332 ("[N]oting that this issue has not been addressed by the Second Circuit, this Court concludes that [Section 1132(g)(2)] does not preempt recovery of contractual liquidated damages for delinquent employee pension and welfare trust fund contributions where, as in this case, such contributions have been paid prior to suit.").

6.  Arguably, Defendant has also disputed whether it was late at all in making payments to the Funds, though Magistrate Judge Smith arrived at the contrary conclusion (R & R 362 n. 5). The R & R does not specify how Magistrate Judge Smith reached the conclusion that Defendant did not contest its delin-

quency, though it seems plausible that she did so based on Defendant's responses to Plaintiff's statements that "Defendant was delinquent in paying its monthly contributions and incurred late charges" (Pl.'s Rule 56.1 Statement in Supp. of Pl's. Mot. for Summ. J. ¶¶ 6, 10). Though Defendant "[d]isputed" those statements in full, in doing so Defendant asserted only that the CBA "is ambiguous with respect to the incurring of late charges" and did not specifically address the allegation that Defendant was delinquent. (Def.'s Resp. to Pl.'s Statement of Material Facts ¶¶ 6, 10.) Nor did Defendant address the significance of the document identified by Plaintiff as the "Report of Earnings by Employees and Affiliated Employees of Local 445" (Decl. of William D. Frumkin in Supp. of Pl.'s Mot. for Summ. J. ¶ 3), which refers to "[c]ontributions on or before the 10th day of the month following the end of the payroll period for which the report is made" (*id.* Ex. 2, at third unnumbered page). Though resolution of the issue is not necessary to the determination that summary judgment in Plaintiff's favor is unwarranted, the Court does not believe that Defendant's Rule 56.1 submissions definitively concede the delinquency of Defendant's contributions.

ment on the Funds' claim for contractual damages is denied.

### III. Conclusion

For the reasons stated herein, Magistrate Judge Smith's R & R is adopted to the extent that it is consistent with this Opinion. Plaintiff's motion for summary judgment is denied, and Defendant's cross-motion for partial summary judgment as to Plaintiff's claim for statutory damages pursuant to 29 U.S.C. § 1132(g)(2) is granted.

The Clerk of Court is respectfully directed to terminate the pending Motions (Dkt. No. 15).

SO ORDERED.

## REPORT AND RECOMMENDATION

LISA MARGARET SMITH, United States Magistrate Judge.

**TO: THE HONORABLE KENNETH M. KARAS, UNITED STATES DISTRICT JUDGE**

Plaintiff Adrian Huff, as Chairman of the Board of Trustees of Teamsters Local 445 Construction Division Welfare, Pension and Annuity Funds and of Teamsters Local 445 Education and Training Fund (collectively herein, "Plaintiff" or "Funds") filed this action against Defendant Cruz Contracting Corporation (herein, "Defendant") pursuant to the Labor Management Relations Act, 29 U.S.C. § 185, and the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001, *et seq.,* seeking an award of delinquency fees incurred by the Defendant for making late contribution payments to the Funds between May of 2005 and September of 2006. *See* Docket # 1, Complaint (herein, "Comp."). The Funds maintain, and the Defendant does not dispute, that the Defendant was under an obligation to make timely contributions to several employee welfare and pension benefit plans pursuant to a collective bargaining agreement (herein, "CBA") between the Defendant and Local Union No.

445, International Brotherhood of Teamsters of annexed AFL–CIO. *See* Comp. at ¶ 19. The Funds commenced this instant suit against the Defendant seeking recompense for the ten percent late fee it alleges the Defendant owes for each monthly contribution it made late to the respective Funds; the Funds do not seek to collect unpaid contributions from the Defendant as there is no dispute that the Defendant eventually paid all of the contributions it owed to the Funds prior to the filing of this action. *See* Docket # 18, Funds' Rule 56.1 Statement (herein, "Funds' 56.1 Statement") at ¶¶ 5, 9; *see* Docket # 19, Defendant's Opposition (herein, "Def's Opp."), Defendant's Statement of Additional Undisputed Material Facts at ¶ 1.

Following a period of pretrial discovery supervised by the undersigned, the Funds now move for summary judgment in their favor on the ground it is undisputed that they are entitled to an award of late charges from the Defendant in the amount of $22,913.31 plus attorney's fees and costs. *See* Funds' 56.1 Statement at ¶ 11. The Funds advance alternative theories against the Defendant in support of their motion for an award of the unpaid late charges and attorney's fees and costs. First, the Funds submit that they are entitled to a statutory award of (1) interest on the unpaid contributions, (2) liquidated damages, and (3) reasonable attorney's fees and costs pursuant to 29 U.S.C. § 1132(g)(2) as a result of their efforts to enforce the terms of the CBA with the Defendant. *See* Docket # 16, Funds' Memorandum of Law in Support of Motion for Summary Judgment (herein, "Funds' Mem.") at pp. 6–7. In the alternative, the Funds assert that they are entitled to a contractual award of liquidated damages and reasonable attorney's fees pursuant to the terms of the CBA with the Defendant based upon the Defendant's late payment

of contributions to the Funds. *See* Funds' Mem. at p. 7.

The Defendant opposes the Funds' motion for summary judgment on the grounds that it paid the contributions to the Funds prior to the commencement of this action and that therefore the Funds cannot seek compensation pursuant to 29 U.S.C. § 1132(g)(2). *See* Def's Opp. at pp. 4–5. Defendants argue that a plaintiff may only seek damages pursuant to § 1132(g)(2) upon a showing that the contributions owed pursuant to a CBA remained unpaid at the time the suit was commenced. *Id.* Additionally, the Defendant argues that summary judgment in favor of the Funds on its claim of contractual damages is inappropriate because there exists a genuine issue of material fact as to whether the Funds can automatically assess the Defendant a ten percent late fee for untimely contributions under the terms of the CBA. *See id.* at pp. 6–7.

The Defendant has cross-moved for partial summary judgment in its favor on the Funds' claim of statutory damages under § 1132(g)(2). *See* Def's Opp. at p. 1. ("Defendant Cruz ... opposes [the Funds'] Motion and Cross Moves for Partial Summary Judgment on [the Funds'] First, Second and Third Claims for Relief seeking statutory damages under ERISA." [sic] ). The Defendant appears to premise its cross motion on the ground that the Funds are not entitled to summary judgment on their claim of an entitlement to an award of statutory damages under § 1132(g)(2) because the Defendant paid the unpaid contributions prior to the commencement of this action and that this claim for relief must be dismissed. *See* Def's Opp. at p. 4. The Funds oppose the Defendant's cross motion for partial summary judgment on procedural grounds and argue that the Defendant failed to comply with Local Rule 56.1 and with the Individual Practices of the undersigned which require a pre-motion conference with the Court before filing a summary judgment motion. *See* Docket # 20, Funds' Reply Memorandum of Law (herein, "Funds' Reply") at pp. 7–8.

For the following reasons I conclude, and respectfully recommend that Your Honor should conclude, that the Funds' motion for summary judgment seeking an award of statutory damages under 29 U.S.C. § 1132(g)(2) or in the alternative an award of contractual damages under the CBA should be denied and that the Defendant's cross-motion for partial summary judgment seeking dismissal of the Funds' claim for statutory damages under ERISA, 29 U.S.C. § 1132(g)(2), should be granted.

### *BACKGROUND*

A. *Facts*

The following recitation of fact is drawn from the Complaint, the Funds' 56.1 Statement of Undisputed Material Fact, and the Defendant's response thereto. The following facts are assumed to be true for the purposes of this motion and are undisputed unless otherwise noted.

1. Provisions of the CBA

The Defendant and Local Union No. 445, International Brotherhood of Teamsters of annexed AFL–CIO, entered into a CBA which provides that "defendant Cruz would make timely payment of contributions to the Funds on behalf of employees of defendant Cruz within the bargaining unit represented by Local 445." *See* Comp. at ¶ 19. Under the terms of the CBA, Defendant Cruz agreed to make contributions to the Welfare Fund, the Pension Fund, the Annuity Fund, and the Education and Training Fund. *Id.; see also* Funds' 56.1 Statement at ¶ 2. The CBA at issue in this case has three operative articles covering these respective employee welfare benefit plans: Article XVI

covers the Welfare and Pension Funds; Article XXV covers the Annuity Fund; and Article XXVI covers the Education and Training Fund. *See* Docket # 17, Declaration of William Frumkin, Esq. (herein, "Frumkin Decl."), Exhibit 1, Agreement between Teamsters Union Local 445 and Cruz Contracting (herein also referred to as, "CBA") at pp. 11, 19, 20.[1]

The Funds assert, and the Defendant does not dispute, that the CBA requires the Defendant to make payments to these employee welfare benefit plans by a certain point in time. Each Article specifies when the Defendant's contribution is due for a specific fund. Article XVI, governing Welfare and Pension contributions, specifies that payment shall be made "at the end of each work week, except [where] [a]n employer ... posts a bond equal to the average monthly Welfare and Pension contributions[, then an employer] may pay over such contributions at the end of the month." *See* CBA at p. 11, ¶¶ B, C. Articles XXV and XXVI, governing Annuity Fund contributions and Education and Training fund contributions, respectively, specify that "payments will be made weekly to the Fund by Check, payable to [the specific fund.] The Employer shall remit and pay over such contributions at the end of each work week." *See* CBA at p. 20, ¶ E (applying to Annuity Fund contributions); p. 21, ¶ D (applying to Education and Training Fund contributions).

Articles XVI, XXV, and XXVI each contain language specifying the possible fees that the Defendant might incur in the

event that the Defendant does not make its required contributions to the respective funds. Article XVI, covering Welfare and Pension Fund contributions, provides that "[i]n the event of a work stoppage, legal action or arbitration, as a result of a violation of this provision, the [Defendant] shall be responsible for the payment of all lost wages and conditions by the employees involved in such work stoppage, legal action or arbitration, plus all legal fees and delinquent monies owed to the Fund(s) with a ten percent (10%) charge for such delinquency." *See* CBA at p. 11, ¶ F. Articles XXV and XXVI, however, each contains language that is slightly different than the language contained in Article XVI. Articles XXV and XXVI both provide that, "[i]n the event of a work stoppage, legal action or arbitration caused by the failure of the [Defendant] to make contributions required as provided for in this Article, the [Defendant] shall be responsible for the payment of all lost wages and conditions to the employees involved in such work stoppage, plus all legal fees, and monies owed the Fund, with a ten percent (10%) late penalty charge for such delinquency on the amount of unpaid contributions due." *See* CBA at p. 20, ¶ G (regarding the Annuity Fund); p. 21, ¶ G (regarding the Education and Training Fund).

### 2. Payments Made Pursuant to the CBA

The Funds assert that the Defendant was late in making its aforementioned pay-

---

**1.** The Funds assert, and the Defendant does not dispute, that the Defendant and the Union entered into the CBA at issue in this case on May 16, 2005. *See* Funds' 56.1 Statement at ¶ 1; *see* Docket # 19, Def's Opp., Response to Plaintiffs' Statement of Material Facts (herein, "Def's 56.1 Statement") at ¶ 1. The copy of the CBA attached to the Frumkin Declaration and submitted to the Court, however, is dated as being in effect between May 1, 2002, and

April 30, 2005. *See* Frumkin Decl., Ex. 1, CBA. The document, however, is signed by a representative of the Union and dated May 16, 2005. *See* CBA at p. 23. In light of the parties' agreement that there existed a CBA in effect between the Defendant and the Union, the Court assumes that the CBA attached to the Frumkin Declaration is the governing CBA at issue in this case.

ments to the Welfare Fund, the Pension Fund, the Annuity Fund, and the Education and Training Fund for each month between May 2005 and July 2006, and again in September of 2006. *See* Funds' 56.1 Statement at ¶¶ 5, 8. Specifically, the Funds assert that the Defendant was "responsible for paying the monthly contributions by the tenth day of the month following the end of the month for which the contribution was due." *See* Funds' 56.1 Statement at ¶ 3. As evidence of these late payments, the Funds submit letters that it issued to the Defendant on a monthly basis between July of 2005 and August of 2006 that notify the Defendant that it made late monthly contributions to the respective funds and that therefore it was responsible for paying a ten percent late charge on each late contribution. *See* Frumkin Decl., Ex. 2. Each letter states that "[p]ayments are due by the 10th of the month. Our records show you were delinquent in your Monthly/Weekly payments. 10% Late Charges apply as follow." *Id.*

Although the Defendant does not dispute that it was late in making monthly contributions to the respective funds during the months in question, *see* Def's 56.1 Statement at ¶ 5, and also concedes that it made such contributions after the tenth of the month in which the contributions were due, *id.,* the Defendant disputes that the CBA requires that it make such payments to the Funds by the tenth of the month, *see* Def's 56.1 Statement at ¶ 3. The Defendant additionally disputes that the terms of the CBA allow the Funds to assess an automatic ten percent charge on the Defendant for making late payments to the Funds. *See* Def's 56.1 Statement at ¶ 4. The Defendant argues that a genuine issue of material fact exists as to whether the CBA allows the Funds to assess late fees automatically. *See* Def's Opp. at p. 6. It is undisputed, however, that all of the monthly contributions that the Defendant owed the Funds were paid in full prior to the

Funds commencing this suit. *See* Funds' 56.1 Statement at ¶¶ 5, 9; Def's 56.1 Statement at ¶¶ 5, 9; *see also* Docket # 19, Def's Opp., Defendant's Statement of Additional Undisputed Material Facts at ¶ 1 ("Defendant Cruz paid its contributions in full pursuant to its [CBA] . . . prior to the commencement of the within law suit [sic]."); Frumkin Decl., Exhibit 4, Balance Sheet (reflecting that the Defendant made delinquent payments in full prior to date of commencement of this lawsuit); Def's Opp., Declaration of Ronald Tobia (containing an exhibit reflecting Defendant's delinquent payment of September 2006 contributions in November of 2006).

## DISCUSSION

### A. *Summary Judgment Standard and Local Rule 56.1*

#### 1. *Summary Judgement Standard*

Pursuant to the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 320–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is "material" when it may affect the outcome of a case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* A trial judge may, therefore, grant summary judgment only if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law. *Id.* at 250, 106 S.Ct. 2505. The

inquiry performed is the threshold inquiry of determining whether there are any genuine factual issues that properly can be resolved only by a finder of fact. *Id.*

Summary judgment may be granted only "[i]f after discovery, the nonmoving party 'has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.'" *Berger v. United States,* 87 F.3d 60, 65 (2d Cir.1996) (quoting *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548) (alteration in original). "The nonmoving party must have 'had the opportunity to discover information that is essential to his [or her] opposition' to the motion for summary judgment." *Trebor Sportswear Co. v. The Limited Stores, Inc.,* 865 F.2d 506, 511 (2d Cir.1989) (quoting *Anderson,* 477 U.S. at 250 n. 5, 106 S.Ct. 2505). Moreover, a court should "constru[e] the evidence in the light most favorable to the nonmoving party and draw[ ] all reasonable inferences in its favor." *Mount Vernon Fire Ins. Co. v. Belize NY, Inc.,* 277 F.3d 232, 236 (2d Cir.2002); *Farias v. Instructional Sys., Inc.,* 259 F.3d 91, 97 (2d Cir.2001); *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 764 (2d Cir.1998); *see also Anderson,* 477 U.S. at 261 n. 2, 106 S.Ct. 2505. Thus, "[o]nly when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." *Cruden v. Bank of New York,* 957 F.2d 961, 975 (2d Cir.1992) (quoting *H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys. Inc.,* 879 F.2d 1005, 1011 (2d Cir. 1989)).

In a case such as this, where the parties have filed cross motions for summary judgment, the Court must consider each motion for summary judgment individually on its own merits and must draw all reasonable inferences in favor of the nonmoving party. *See Make the Road by Walking, Inc. v. Turner,* 378 F.3d 133, 142 (2d Cir.2004). Additionally, the denial of one party's motion for summary judgment does not mean that the other party is entitled to judgment automatically in its favor on its motion. *See Morales v. Quintel Entm't Inc.,* 249 F.3d 115, 121 (2d Cir.2001). Each motion must be considered independently and the Court "need not enter judgment for either party" so long as there exist genuine issues of material fact on both parties' claims. *Id.*

### 2. *Local Rule 56.1*

Pursuant to the Local Rules for the Southern and Eastern Districts of New York, a moving party must attach a "separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." *See* Local Rule 56.1(a). A similar requirement is imposed upon the party opposing the motion for summary judgment. *See* Local Rule 56.1(b) (requiring the party opposing a motion for summary judgment to identify the material facts which it contends are in dispute). Should the non-moving party fail to respond to the facts alleged by the moving party to be undisputed, those facts "will be deemed to be admitted for purposes of the motion...." Local Rule 56.1(c). Importantly, "[e]ach statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e)." *See* Local Rule 56.1(d). This requirement "free[s] district courts from the need to hunt through voluminous records without guidance from the parties." *Holtz v. Rockefeller Co.,* 258 F.3d 62, 74 (2d Cir.2001) (citations omitted).

Thus, as a general rule, the Court may accept as true the material facts asserted by the moving party in an unopposed Rule

56.1 statement. *See Gubitosi v. Kapica*, 154 F.3d 30, 31 n. 2 (2d Cir.1998). The Second Circuit has cautioned, however, that the opposing party's failure to comply with the local rules does not absolve the moving party from meeting its own burden of proof in its motion for summary judgment. *See Holtz*, 258 F.3d at 72–74. The *Holtz* court also noted that a district court has "broad discretion" to determine whether to overlook noncompliance with the local rules. *Id.* at 73. Synthesizing the spirit of the Local Rules, and the *Holtz* court's decision, failure to respond to a moving party's Rule 56.1 Statement may mean that the uncontested facts contained therein will be assumed to be true for the purposes of the motion if such facts are properly supported by citations to admissible evidence. *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir.2003).

B.  *Funds' Motion for Summary Judgment*[2]

The Funds move for summary judgment in their favor on their claim of an entitlement to statutory damages and contractual damages under ERISA and the CBA respectively. The Funds claim that they are entitled to an award of interest on unpaid contributions, liquidated damages, and reasonable attorney's fees and costs pursuant to 29 U.S.C. § 1132(g)(2), and in the alternative a claim that they are entitled to an award of a ten percent late fee and reasonable attorney's fees on each late payment the Defendant made to the Funds after the tenth of the month in which such payment was due. For the following reasons, I conclude, and respectfully recommend that Your Honor should conclude, that the Funds are not entitled to an award of statutory damages pursuant to 29 U.S.C.

§ 1132(g)(2) and that the Funds are not entitled to an award of contractual damages pursuant to the terms of the CBA.

1.  Statutory Damages pursuant to 29 U.S.C. § 1132(g)(2)

Section 1132(g)(2) provides in pertinent part that in any action by "a fiduciary for or on behalf of a plan to enforce [29 U.S.C. § 1145] . . . in which a judgment in favor of the plan is awarded, the court shall award" certain classes of relief. 29 U.S.C. § 1132(g)(2). These categories of relief include monetary awards for (1) unpaid employee benefit plan contributions, (2) interest on the unpaid contributions, (3) liquidated damages, (4) reasonable attorney's fees and costs of the action, and (5) other legal or equitable relief deemed proper by the Court. *See* 29 U.S.C. § 1132(g)(2)(A)-(E). Section 1145 of Title 29 requires that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or agreement." The Funds argue that the Defendant was under an obligation to make timely contributions to several employee benefit plans and that the Defendant failed to make such timely contributions. The Funds conclude, therefore, that in light of the Defendant's tardy contributions, the Funds are entitled to an award of statutory damages under § 1132(g)(2)(B)-(D). *See* Funds' Mem. at p. 6. The Funds, however, do not seek an award of the actual contributions that the Defendant owed each of the Funds because such contributions were paid in full by the Defen-

---

2.  The Funds raise several arguments in support of their motion for summary judgment that the Court need not reach because of the recommendations contained herein. *See* Funds' Mem. at pp. 4–5 (asserting that the

Defendant cannot rely on an oral modification of an ERISA agreement as a defense). Because the Court need not reach these arguments, the undersigned offers no opinion on the propriety of such arguments in this case.

dant at the time the Funds commenced this suit. *See supra* at p. 7.

This is not the first case in which a plaintiff seeks statutory damages under § 1132(g)(2) because of an employer's untimely contributions to an employee welfare benefit plan. What is unique about this case, however, is that the Funds predicate their demand for damages upon contributions that were paid in full by the Defendant prior to the commencement of this action. The timing of the Defendant's payment of the contributions prior to the initiation of this suit not only makes this case distinguishable from many of the cases cited by Funds in support of their motion for summary judgment, but, for the following reasons, also places this case outside of the ambit of § 1132(g)(2).

The language of § 1132(g)(2) specifies that "[i]n any action ... by a fiduciary ... in which a judgment in favor of the plan is awarded, the court shall award the plan" the categories of relief enumerated *supra.* 29 U.S.C. § 1132(g)(2). In this case, however, the Funds do not yet have a judgment in their favor. The Second Circuit has addressed this scenario in a similar circumstance and has held that "the availability of relief under § 1132(g)(2)" is not limited exclusively to instances where contributions remain unpaid and outstanding on the date a judgment is entered. *See Iron Workers District Council v. Hudson Steel Fabricators & Erectors, Inc.,* 68 F.3d 1502, 1507 (2d Cir.1995). In *Iron Workers* the Second Circuit was presented with the question of whether a plaintiff could collect statutory damages under § 1132(g)(2) for delinquent contributions that were unpaid at the time the suit was commenced but were subsequently paid in full by the defendant two days prior to the district court holding oral argument on the plaintiff's motion for summary judgment seeking an award of statutory damages. 68 F.3d at 1508. In ruling that § 1132(g)(2) provides

a greater scope of relief than the plain language of the statute may suggest, the *Iron Workers* court noted that "[p]ermitting delinquent employers to avoid paying § 1132 penalties after suit is filed ... would largely thwart the purpose of § 1132(g)(2) to provide fiduciaries with an effective weapon against delinquent employers." *Id.* Thus, under *Iron Workers,* a plaintiff may be entitled to an award of statutory damages under § 1132(g)(2) even if contributions are paid in full prior to motion practice or the entry of judgment provided that the contributions were unpaid at the time the litigation was filed. *Id.*

Although *Iron Workers* uses broad language in *dicta* that the Funds seize upon to suggest that "an employer cannot escape its statutory liability for interest, liquidated damages or double interest, attorney fees, and costs simply by paying the delinquent contributions before entry of judgment ...," *see* 68 F.3d at 1506, the facts of *Iron Workers* make clear that the Circuit was not considering a situation, as in the instant case, where contributions were delinquent but were paid in full prior to the commencement of litigation. Each of the sister Circuit Court opinions cited and discussed by the *Iron Workers* panel addressed scenarios where employee welfare benefit plan contributions were unpaid at the time the litigation was commenced but were subsequently paid prior to the entry of judgment. *See* 68 F.3d at 1506–07. None of the cases cited and relied upon by *Iron Workers* held that § 1132(g)(2) damages are available for delinquent contributions paid in full prior to the commencement of litigation; to the contrary, each opinion specified that "unpaid contributions exist[ed] at the time of suit...." *Id.* at 1506 (quoting *Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mechanical Contractors, Inc.,* 875 F.2d 212, 215 (9th Cir.1989)).

In *dicta* the Second Circuit also noted that "section 502(g) [29 U.S.C. § 1132(g)(2) ] [does] not by its own terms cover the situation . . . where contributions to [a] plan ha[ve] been paid prior to suit." *See Iron Workers,* 68 F.3d at 1508 (discussing and distinguishing *Board of Trustees of Local 41, International Brotherhood of Electrical Workers Health Fund v. Zacher,* 771 F.Supp. 1323 (W.D.N.Y.1991) from the facts presented in *Iron Workers* ). In *Zacher* the Western District of New York held that a defendant's delinquent contributions paid prior to suit do not support a plaintiff's claim for an award of statutory damages under § 1132(g)(2). Thus, upon a complete reading of *Iron Workers* and the authority discussed therein, it appears that the Second Circuit limited the availability of § 1132(g)(2) statutory damages to situations where employee welfare benefit plan contributions are unpaid at the time the suit is filed. *See* 68 F.3d at 1507. In rendering this interpretation of § 1132(g)(2), the *Iron Workers* panel rejected the argument that a subsequent payment of the delinquent employee welfare benefit plan contributions could prevent a plaintiff from seeking damages under § 1132(g)(2) and held that the existence of delinquent contributions at the time an action is filed is sufficient to trigger recourse under § 1132(g)(2). *Id.* ("We conclude that § 1132(g)(2) . . . simply directs that once there is a favorable judgment, the plaintiff is entitled to all of the measures of relief [specified in § 1132(g)(2) ] not already obtained. In other words, the action must be one to enforce the obligation to pay contributions under § 1145, and therefore no such suit can be commenced in the absence of unpaid contributions. . . .").

Because the Funds' primary argument in support of its motion for summary judgment seeking an award of statutory damages rests upon an unsubstantiated reading of § 1132(g)(2) and of Second Circuit case law, I conclude that the Funds have failed to cite any controlling authority that sustains their claim for an award of statutory damages under § 1132(g)(2) for delinquent contributions that were paid in full prior to the commencement of litigation. Both the Eastern District of New York and the Western District of New York have addressed this situation and have held that the plain language of § 1132(g)(2) does not afford plaintiffs relief where delinquent employee welfare benefit plan contributions are paid in full prior to the initiation of litigation. *See Zacher,* 771 F.Supp. at 1332;[3] *Farrell v. Metropolitan Relocations,* CV 95–0557(CPS), 1996 WL 19223 (E.D.N.Y. Jan. 11, 1996). Although the policy justifications highlighted by the Funds in support of its expanded reading of § 1132(g)(2) are compelling, *see* Funds' Reply at pp. 2–3, and are similar to the policy considerations discussed in *Iron Workers, see* 68 F.3d at 1508, such policy considerations do not overcome the plain language of the statute or warrant any further expansion of the Second Circuit's current interpretation of § 1132(g)(2).

I therefore conclude, and respectfully recommend that Your Honor should conclude, that 29 U.S.C. § 1132(g)(2) does not provide a plaintiff a claim for statutory damages for delinquent employee welfare benefit plan contributions when such contributions have been paid in full prior to the commencement of litigation. I therefore respectfully recommend that the Funds' motion for summary judgment

---

**3.** Although the Second Circuit's opinion in *Iron Workers* narrows *Zacher's* holding that § 1132(g)(2) does not provide for an award of damages "where the contributions, although delinquent, have been paid either prior to commencement of suit or prior to judgment," 771 F.Supp. at 1332, *Zacher's* reasoning that § 1132(g)(2) does not provide for an award of damages for contributions paid prior to suit remains good law.

seeking an award of statutory damages under § 1132(g)(2) should be denied.

### 2. Contractual Damages Pursuant to the CBA

The Funds alternatively seek an award of contractual damages against the Defendant under the terms of the CBA. This claim raises an issue that counsel did not address that the Court must consider before analyzing the Funds' claim for an award of contractual damages: the Court must assess whether the Funds' claim for contractual damages under the terms of the CBA is preempted by ERISA. Should the Funds' claim for an award of contractual damages not be preempted by ERISA, the Court then may consider whether the Funds are entitled to an award of contractual damages on summary judgment.

For the following reasons I conclude, and respectfully recommend that Your Honor should conclude, that the Funds' claim for an award of contractual damages under the terms of the CBA has not been preempted by ERISA. I further conclude, however, and respectfully recommend that Your Honor should conclude, that the Funds are not entitled to an award of contractual damages under the terms of the CBA because the plain language of the CBA's provisions do not provide the Funds for such an award of damages under the undisputed facts of this case. I therefore conclude, and respectfully recommend that Your Honor should conclude, that the Funds' motion for summary judgment for an award of contractual damages should be denied.

### a. Preemption under ERISA

"In ERISA, Congress expressly included a broadly worded preemption clause within a comprehensive statutory scheme." *Smith v. Dunham–Bush, Inc.*, 959 F.2d 6, 8 (2d Cir.1992); *see also* 29 U.S.C. § 1144(a) ("Except as provided in [29 U.S.C. § 1144(b),] the provisions of this subchapter and subchapter III of this chapter [of ERISA] shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title."). ERISA's preemption provisions, while not limitless, are interpreted generously in an effort to create an exclusive and uniform body of federal law governing pension and employee welfare benefit plans. *See Franklin H. Williams Ins. Trust v. Travelers Ins.*, 50 F.3d 144, 148 (2d Cir.1995); *Smith*, 959 F.2d at 8. Under Second Circuit case law a state or common law cause of action is preempted by ERISA if such claim "relates to an employee benefit plan within the meaning of ... 29 U.S.C. § 1144(a), and falls within the scope of the statute's civil enforcement provisions, found in ... 29 U.S.C. § 1132(a)." *Franklin H. Williams Ins. Trust*, 50 F.3d at 149 (quoting *Smith*, 959 F.2d at 8).

It appears to the undersigned that the Second Circuit has not had occasion to rule on whether a claim of contractual damages under a CBA is preempted by ERISA when 29 U.S.C. § 1132(g)(2) does not provide a plaintiff a claim for statutory damages. In *Zacher*, the Western District of New York held that a common law claim for contractual damages under the terms of a CBA was not preempted by § 1132(g)(2) in light of the fact that § 1132(g)(2) did not provide the plaintiff an award of statutory damages where contributions were paid in full prior to the commencement of litigation. *Zacher*, 771 F.Supp. at 1332 ("this Court concludes that § 502(g) [29 U.S.C. § 1132(g)] does not preempt recovery of contractual liquidated damages for delinquent employee pension and welfare trust fund contributions where, as in this case, such contributions have been paid prior to suit."). As noted

above, the facts of *Zacher* are identical to the facts of this case.

The Court in *Zacher* noted that most other Circuit Courts that have had occasion to address this issue have concluded that § 1132(g)(2) does not preempt contractual remedies where § 1132(g)(2) itself does not afford a complainant statutory relief. *See* 771 F.Supp. at 1332 (discussing *Michigan Carpenters Council v. C.J. Rogers*, 933 F.2d 376 (6th Cir.1991) and *Idaho Plumbers*, 875 F.2d 212 (9th Cir.1989)). In *C.J. Rogers* and *Idaho Plumbers*, the Sixth Circuit and Ninth Circuit respectively held that § 1132(g)(2) does not preempt contractual remedies where § 1132(g)(2) does not apply. *See C.J. Rogers*, 933 F.2d at 389–90; *Idaho Plumbers*, 875 F.2d at 216–17. As convincingly stated by *Zacher*, "ERISA simply does not preempt other sources of law beyond the breadth of ERISA's coverage." 771 F.Supp. at 1333.[4]

Accordingly, I conclude, and respectfully recommend that Your Honor should conclude, that ERISA's statutory damages provision does not preempt the Funds from seeking contractual damages under the terms of the CBA where § 1132(g)(2) does not provide the Funds a valid basis for a claim of statutory damages.

b. Contractual Damages under the CBA

The Funds assert that they are entitled to an award of contractual damages consisting of a ten percent late fee on each delinquent monthly contribution the Defendant made between May of 2005 and July of 2006 and that they are also entitled to attorney's fees and costs incurred as a result of initiating legal action seeking such recovery. The Defendant argues in Opposition that the language of the CBA's provisions providing the Funds a right to collect a ten percent late fee and attorney's fees are ambiguous and that a genuine issue of material fact exists as to whether the Funds had to commence a legal action seeking compensation for unpaid contributions—as opposed to commencing litigation to collect unpaid late fees—as a condition precedent to collecting such late fees on each delinquent payment.

The Funds' claim of a right to contractual damages and attorney's fees under the CBA is evaluated under federal common law. *See Feifer v. Prudential Co. of Am.*, 306 F.3d 1202, 1210 (2d Cir.2002); *Elsroth v. Consolidated Edison Co.*, 10 F.Supp.2d 427, 438 (S.D.N.Y.1998). The Funds' claim for relief under the CBA, and the Defendant's Opposition, both call into question the meaning of the terms of the CBA. "When a court interprets a CBA, the traditional rules of contract interpretation apply, provided they are consistent with fair labor policies." *King v. Plan It Const. & Equipment Co.*, 179 F.Supp.2d 71, 75 (E.D.N.Y.2002). "The federal common law governing ERISA 'embodies commonsense canons of contract interpretation.'" *Elsroth*, 10 F.Supp.2d at 438. Such familiar canons of contractual interpretation include effectuating the plain meaning of the terms of the contract, considering the terms of the contract with an eye toward the entire document so as not to render any provision superfluous or nugatory, and evaluating whether a term is ambiguous by considering whether "it is capable of more than one meaning when viewed objectively by a reasonably intelligent person...." *Critchlow v. First UNUM Life Ins. Co.*, 378 F.3d 246, 256 (2d Cir.2004); *see also*

4. The only Circuit that appears to have concluded that ERISA would preempt the Funds from seeking contractual damages under the facts of this case is the Eighth Circuit. *See Carpenters & Joiners Welfare Fund v. Gittleman Corp.*, 857 F.2d 476, 478–79 (8th Cir. 1988). The persuasive discussion in *Zacher*, and the inequity of following *Gittleman's* holding, leads me to conclude that ERISA preemption is not proper when ERISA itself does not allow for an award of statutory damages in a case such as this.

*Elsroth,* 10 F.Supp.2d at 438–39 (summarizing principles of contract interpretation under federal common law).

It is the duty of the Court to discern whether, as a matter of law, the contract language is clear and unambiguous. *King,* 179 F.Supp.2d at 75. If the Court determines the contract language is unambiguous, the Court may apply the unambiguous contract language to the undisputed facts of the case and rule on the parties' compliance with the contract language. *Id.* If the Court determines that the contract language of the CBA is ambiguous and that such language is subject to more than one reasonable interpretation, "the interpretation of the ambiguous contract language . . . is an issue of fact to be resolved by the factfinder." *Id.* In the context of a motion for summary judgment, therefore, the Court may grant a party's motion for summary judgment if (1) there is unambiguous contract language supporting the moving party's interpretation of the contract and there is also no genuine issue of material fact as to the parties' actions or (2) if there is no genuine issue of material fact raised as to the meaning of an ambiguous contract term or provision and there is also no genuine issue of material fact raised as to the parties' compliance with such contractual language. *Id.*

The Funds assert that summary judgment in their favor is warranted because the plain language of the CBA provides them the right to assess a ten percent late

fee on each contribution the Defendant made after the tenth of the month in which such contribution was due. Although not material to a decision in this case, the undersigned has been unable to locate any language in the CBA that requires that contributions to the respective funds be made by the tenth of the month following the month in which such contributions were due.[5] The payment provisions of Articles XVI, XXV, and XXVI each specify that a ten percent charge will be assessed for delinquent payments under certain circumstances; none of these Articles, however, specify that payment must be made by the tenth of the month following the month for which such contributions are due. *See* CBA at p. 11, ¶ C ("An employer who posts a bond equal to the average monthly Welfare and Pension contributions may pay over such contributions at the end of each month."); at p. 20, ¶ E ("Payments will be made weekly to the Fund by Check, payable to Teamsters Local 445 Construction Annuity Funds. The Employer shall remit and pay over such contributions at the end of each work week."); at p. 21, ¶ E ("Payments will be made weekly to the Fund by Check, payable to Teamsters Local 445 Education and Training Fund. The Employer shall remit and pay over such contributions at the end of each work week.").[6]

The Funds maintain that the plain language of the CBA permits them to assess

---

5. The timing of when the Defendant was obligated to make its contributions to the Funds is not material to this case because the Defendant has admitted it was late in making such payments and has challenged only whether the Funds may automatically assess a late penalty for delinquent contributions. Whether payment was due at the end of the month or whether it was due by the tenth of the following month is not material to the disposition of this motion as there is no dispute that the Defendant made delinquent payments to the Funds.

6. Neither party has addressed the disconnect between the allegations that the Defendant was required to make monthly employee welfare benefit plan contributions and the language of Articles XXV and XXVI of the CBA that requires an employer to make weekly employee welfare benefit plan contributions. Without argument or explanation from either party, the Court can only accept the agreed upon undisputed material fact that the Defendant was under an obligation to make monthly contributions.

an employer an automatic ten percent late charge for each delinquent payment it makes. In accord with this interpretation and understanding of the terms of the CBA, the Funds sent correspondence to the Defendant for each month between July of 2005 and August of 2006 informing the Defendant that it was being assessed such a late fee for making delinquent contribution payments to the Annuity Fund, the Welfare Fund, the Pension Fund, and the Education and Training Fund between May of 2005 and June of 2006. *See* Frumkin Decl., Exhibits 2 and 4.

The Defendant argues in Opposition, and the undersigned agrees, that the plain language of the CBA provisions at issue in this case do not support the Funds' assertion that they are entitled to an award of contractual damages on summary judgment. As explained *supra,* Article XVI contains slightly different wording than Articles XXV and XXVI. Under the wording of any of the Articles, however, the plain language of these provisions do not support the Funds' election to assess automatic delinquency charges, commence suit only to collect these delinquency charges, and thereafter move for summary judgment seeking an award of late charges as contract damages.

Article XVI specifies that "[i]n the event of a work stoppage, legal action or arbitration, as a result of a violation of this provision, the Employer shall be responsible for the payment of all lost wages and conditions by the employees involved in such work stoppage, legal action or arbitration, plus all legal fees and delinquent monies owed to the Fund(s) with a ten percent (10%) charge for such delinquency." *See* CBA at p. 11, ¶ F. The operative terms in this Article are the terms "this provision." The only portion of the CBA that "this provision" could refer to is Article XVI itself, which requires that the Defendant make timely monthly contributions to the Welfare and Pension Funds. Thus, paragraph F is read as providing the Funds a right to collect "all legal fees and delinquent monies owed to the Fund(s) with a ten percent (10%) charge for such delinquency" in the event that the Funds have to commence a "legal action" to collect unpaid delinquent contributions. In the absence of a legal action commenced by the Funds to recoup unpaid delinquent contributions owed by an employer, the plain language of paragraph F of Article XVI does not provide the Funds recourse to impose an assessment of a ten percent late charge on each late monthly contribution. The plain language of the CBA makes clear that litigation must be commenced to collect delinquent employee welfare benefit plan contributions before the Funds can seek to impose a late charge on an employer for making such delinquent contributions.

Although an argument could be made that the terms "this provision" in paragraph F are ambiguous, paragraph F of Article XVI, read in the context of the entire agreement, is meant to serve as an enforcement mechanism to provide the Funds recourse for violations of the substantive provisions of Article XVI requiring payment of employee welfare benefit plan contributions. Paragraph F delineates the damages that the Funds may be entitled to should they order a work stoppage, commence a legal action, or initiate an arbitration proceeding as a result of an employer's failure to pay employee welfare benefits plan contributions. Paragraph F, however, does not allow the Funds to commence suit against an employer based only upon the employer's refusal to pay late charges for delinquent contributions paid prior to suit.

In this case it is undisputed that the Funds did not commence this suit to collect unpaid or delinquent contributions

owed by the Defendant. Rather, the Funds commenced this suit to collect the delinquency charges that they assessed the Defendant prior to the commencement of this suit. It is undisputed that at the time of the commencement of this litigation that the Defendant did not owe any monthly employee welfare benefit plan contributions to the Funds. Accordingly, there is no genuine issue of material fact as to why the Funds commenced the instant action: the Funds initiated this suit only to collect the late payments it assessed against the Defendant and not to collect delinquent and outstanding employee welfare benefit plan contributions.

In light of these undisputed facts, I conclude, and respectfully recommend that Your Honor should conclude, that summary judgment in the Funds' favor seeking an award of contractual damages is not appropriate because the plain language of the terms of the CBA do not provide the Funds a right to assess a delinquency fee on the Defendant unless and until the Funds commence a legal action to collect delinquent and unpaid contributions. In this case, however, the Funds did not commence suit to collect unpaid contributions; the Funds commenced suit to collect the late fees that, under the terms of the CBA, are conditioned on the commencement of litigation that seeks to collect unpaid contributions.

The undersigned's reading of the plain language of the CBA and conclusion that the Funds are not entitled to summary judgment awarding them contractual damages is bolstered by the plain language of Articles XXV and XXVI, which govern the Defendant's contributions to the Annuity Fund and Education and Training Fund. Both Articles provide in clear and unambiguous language that "[i]n the event of a work stoppage, legal action or arbitration caused by the failure of the Employer to make contributions required as provided in this Article, the Employer shall be responsible for the payment of all lost wages and conditions to the employees involved in such work stoppage, plus all legal fees, and monies owed the Fund, with a ten percent (10%) late penalty charge for such delinquency on the amount of unpaid contributions due." *See* CBA at p. 19, ¶ G; p. 20, ¶ G. This language expressly conditions an employer's payment of legal fees and the ten percent late charge "in the event of a work stoppage, legal action or arbitration caused by the failure of the Employer to make contributions required as provided in this Article. . . ." *Id.* As established above, however, it is undisputed that the Funds did not commence this suit to recover outstanding contributions owed by the Defendant either to the Annuity Fund under Article XXV or to the Education and Training Fund under Article XXVI. In this case, the Funds commenced suit to recover the late charges that the Funds assessed the Defendant. Analogous to the undersigned's reading of Article XVI, the undersigned reads Articles XXV and XXVI as only providing the Funds a right to collect legal fees and late charges in the event that the Funds commence litigation to collect unpaid or delinquent contributions that remain unpaid at the time of the commencement of the legal action.[7]

In conclusion, upon a reading of the plain and unambiguous language of the

---

7. In light of the fact that the Defendant did not owe the Funds any monthly contributions at the time of the commencement of this action, the Funds could not have commenced this action to collect the monthly contributions due to the respective Funds under the CBA as such contributions had been made in full. Had the Funds commenced this action to collect delinquent contributions that were paid in full by the Defendant at the time the litigation was commenced, this action would have been defective on numerous factual and jurisdictional grounds, such as failure to state a claim and mootness.

CBA, including Articles XVI, XXV, and XXVI, I conclude, and respectfully recommend that Your Honor should conclude, that Articles XVI, XXV, and XXVI do not provide the Funds a basis upon which they can predicate their motion for summary judgment seeking an award of contractual damages in light of the undisputed material facts. I therefore conclude, and respectfully recommend that Your Honor should conclude, that summary judgment in favor of the Funds awarding them contractual damages of $22,913.31 plus attorney's fees and costs under the terms of the CBA is not proper and that Funds' motion for summary judgment seeking such an award should be denied.

C. *Defendant's Cross–Motion for Partial Summary Judgment on Funds' Claim for Statutory Damages Pursuant to ERISA, 29 U.S.C. § 1132(g)(2)*

As a corollary to the recommendation offered above that the Funds are not entitled to an award of statutory damages under 29 U.S.C. § 1132(g)(2) under the facts of this case, I conclude, and respectfully recommend that Your Honor should conclude, that the Defendant's motion for partial summary judgment seeking dismissal of the Funds' claim for statutory damages under § 1132(g)(2) for delinquent contributions that were paid in full prior to the commencement of this litigation should be granted. There appears to be no genuine issue of material fact for resolution at trial that would entitle the Funds to an award of statutory damages under

§ 1132(g)(2). *See supra* at pp. 357–60. Accordingly, I conclude, and respectfully recommend that Your Honor should conclude, that the Defendant's motion for summary judgment seeking dismissal of the Funds' claim for statutory damages under 29 U.S.C. § 1132(g)(2) should be granted.[8]

The Defendant, however, has only cross-moved for partial summary judgment seeking dismissal of the Funds' claim of statutory damages under 29 U.S.C. § 1132(g)(2). *See* Def's Mem. at p. 1. Should Your Honor adopt the recommendations offered above, the Funds' Complaint would only be dismissed in part and the Funds' remaining causes of action arising under the Labor Management Relations Act, 29 U.S.C. § 185, would remain colorable claims ready for trial. The undersigned offers no opinion on the propriety of the Funds' remaining causes of action under the LMRA in light of the fact that the Defendant has only cross-moved for partial summary judgment and has offered no argument on the Funds' LMRA claims.

### CONCLUSION

For the aforementioned reasons I conclude, and respectfully recommend that Your Honor should conclude, that the Funds' motion for summary judgment seeking an award of statutory damages under ERISA, 29 U.S.C. § 1132(g)(2), or in the alternative an award of contractual damages under the terms of the CBA, should be denied. I further conclude, and

---

**8.** Although the Funds oppose the Defendant's cross-motion for partial summary judgment on several procedural grounds, such as failure to comply with Local Rule 56.1 and the Individual Practices of the undersigned, the undisputed facts of this case lead me to conclude that recommending denial of the Defendant's cross-motion for noncompliance with these provisions is not warranted. *See, e.g., D.H. Blair v. Gottdiener,* 462 F.3d 95, 108 n. 2

(2d Cir.2006) (noting that the district courts enjoy broad discretion regarding the enforcement of the Local Rules). Moreover, it does not appear that the Defendant failed to comply with Local Rule 56.1 as the Defendant includes both a response to the Funds' 56.1 Statement and its own assertion of disputed and undisputed material fact in its memorandum of law. *See* Docket # 19.

respectfully recommend that Your Honor should conclude, that the Defendant's cross-motion for partial summary judgment seeking dismissal of the Funds' claim for statutory damages under ERISA should be granted. As explained above, should Your Honor adopt these recommendations, it appears that the Funds' remaining causes of action asserted under the LMRA are ready for trial.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and FED.R.CIV.P. 72(b), the parties shall have ten (10) days, plus an additional three (3) days, pursuant to FED. R.CIV.P. 6(e), or a total of thirteen (13) working days, see FED.R.CIV.P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of The Honorable Kenneth M. Karas at the United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601, Requests for extensions of time to file objections must be made to Judge Karas.

May 10, 2008.